Pauline SUMMEY, Bernice Hodges, and Rayline Hammond, Atoka County Deputy County Clerks; Karen Snead and Debra Blackmon, Atoka County Deputy Court Clerks; Ann Copeland and Lori Hutson, Atoka County Deputy County Assessors; Leonard Harbour, Jake Mayhew and Carl Hutson, Atoka County Deputy Sheriffs; and Doris Barris and Phyllis Marshall, Atoka County Deputy County Treasurers, Appellees,

v.

Joe TISDALE, Munroe Cochran and Leo Evans, Board of County Commissioners, County of Atoka, State of Oklahoma; and Floyd Mason, Duke Ellis and A.R. Pool, County Excise Board, County of Atoka, State of Oklahoma, if in office, or if not in office, the duly appointed or elected successors thereof, Appellants.

No. 54525.

Supreme Court of Oklahoma.

Nov. 15, 1982.

Rehearing Denied March 1, 1983.

Ronald J. Stubblefield, Dist. Atty., 19th Dist., J. Douglas Gabbard II, Asst. Dist. Atty., Atoka, for appellants.

John B. Axton, Conn, Mayhue, Mayhue & Axton, Ada, for appellees.

OPALA, Justice:

The dispositive issues in this appeal are: [1] Were salary recommendations made by a member of the county excise board, during the budget planning stage, sufficient to constitute an "appropriation of funds" for that purpose? [2] Did the county excise board have the discretion to reduce the salary rate proposed by principal county officers for their deputies? and [3] Did the county excise board abuse its discretion by arbitrarily reducing the proposed salary increases for deputies in the county offices? We answer the first and third questions in the negative and the second in the affirmative.

## FACTS

This case involves a dispute between several deputies in the various offices of county government in Atoka County—county clerk, court clerk, county assessor, treasurer and sheriff—and the Excise Board and Board of County Commissioners over the reduction in the recommended salary increases for the fiscal year 1979–1980.

The principal officers filed with the County Commissioners [Commissioners] their annual budget report which included

an estimate of their needs and income for the ensuing fiscal year as well as a report of the earnings and cost of maintenance of their respective offices for the previous year. The Commissioners prepared a budget from these estimates and submitted it to the Excise Board [Board] for approval. This report also included an estimate of probable income from sources other than ad valorem taxes.[1]

According to federal regulations, the Commissioners held a public hearing on the proposed uses to be made of the federal revenue sharing funds, followed by a public budget hearing. At each of these meetings, the plaintiffs [deputies] appeared and requested that the funds be used to pay their proposed salary increases which had been reduced by the Board.[2]

The final budget approved by the Board did not include the full amount of the requested salary increase. In a mandamus proceeding brought by the deputies, the trial court directed the Commissioners and the Board to include federal revenue sharing funds in computing the estimate of probable income and to appropriate sufficient funds from county and federal revenues to pay the maximum salary increase for that fiscal year.[3] The deputies also sought to

1. Excluded from the report was probable income from non-recurrent sources. It did not reflect $57,089 in emergency road funds from the State Department of Transportation because it was deemed to be a non-recurrent revenue source. Another revenue source not shown on this report was $96,337 from federal revenue sharing funds.

   In the Commissioners' budget request was $459,177 for the estimated needs of all the county offices. The report of probable income was only $271,783.

2. Of the federal revenue sharing funds available that fiscal year, $20,000 was appropriated to personal services (salaries) and the balance, $76,337, was divided between maintenance and operations and capital outlay.

3. The trial court found: (1) that the Board had the discretion to, and did, approve the salary increases prior to the submission of estimate of needs and could not thereafter modify or deny the salary increase if within the income and revenue provided, (2) there was sufficient funds to pay the salaries in the estimate of needs, (3) that revenue sharing funds were ascertainable and should have been considered in

preparation of the county budget, (4) that the Board is required by federal law to follow the same budgeting, appropriations, expenditure and decision-making process for the revenue sharing funds as it follows for its own locally-generated funds, but instead the Commissioners exercised complete control over the funds, (5) that the Board did not consider all probable sources of funds available in making its final determination, (6) that the Commissioners did not adequately and accurately report to the Excise Board the probable income that would be received from all sources other than ad valorem taxes, i.e. $57,089 of the emergency road funds, and revenue sharing funds, (7) the Board had the duty to report the amount of funds included within a $200,000 certificate of deposit which may be available for appropriation, (8) and that the actions and omissions of the Excise Board and Commissioners did not involve bad faith or maliciousness but appeared "to be due to the general nature of the Federal Revenue Sharing Act" and their "lack of understanding of the applicable laws, rules and regulations."

The trial court directed the Board and Commissioners, or their successors (a) to follow the

have costs and counsel fees assessed. The trial court denied the defendants' [Board's and Commissioners'] motion for new trial and assessed against them attorney's fees and set an appeal bond. The defendants bring this appeal.

In an original proceeding in this court, the defendants sought to prohibit the enforcement of an order requiring them to each make an "appeal and supersedeas" bond for $6,000 to stay execution of judgment. We found the trial judge's order—made under the provisions of 12 O.S.1971 § 974—to have been improper and prohibited its enforcement.

I.

## RECOMMENDATIONS BY COUNTY EXCISE BOARD AT BUDGET PLANNING CONFERENCE DOES NOT CONSTITUTE AN APPROPRIATION OF FUNDS

The Board contends that the trial court erred in finding that—prior to the submission of estimate of needs—it had the discretion, and exercised it, to approve the number of deputies and assistants and to approve the maximum salaries requested by the county officers. The Board further argues that a recommendation made by one of its members—that county officers submit a request for maximum salaries—is not an appropriation for salaries within the meaning of 68 O.S.1971 § 2486.[4]

These contentions require an examination of the statutory scheme for annual budget preparation and the procedures for review and approval.[5]

### A. *The Commissioners' Statutory Duties*

As the chief fiscal agency of the county, the Commissioners on the first Monday in July are required to begin preparing the county's financial statement for the previous year ending June 30th.[6] By this date, county officers and department heads must submit their estimates of needs to the Commissioners.[7] The county clerk, along with the county treasurer, prepares an annual "financial exhibit" and forwards it to the Commissioners.[8] From the reports submitted, the Commissioners prepare an estimate of needs and financial statement[9] which must then be published in a legally-qualified newspaper.[10] The clerk and treasurer's annual financial exhibit must also be published in a newspaper of general circulation in the county.[11] The Commissioners' final step in the budget-making process is to submit the completed estimate of need

same budgeting procedures in appropriating federal revenue sharing funds as is followed with locally generated funds, (b) to consider revenue sharing funds in determining available funds for paying the estimate of needs for each office and (c) to appropriate sufficiently from locally generated funds and revenue sharing funds to pay the maximum salaries to the deputies and assistants as originally set forth in the estimate of needs.

4. The terms of 68 O.S.1971 § 2486 provide in pertinent part: " * * * In its functionings [the county excise board] ... is ... empowered to require adequate and accurate reporting of finances and expenditures for all budget and supplemental purposes, charged with the duty of requiring adequate provision for performance of mandatory constitutional and statutory governmental functions within the means available, but *it shall have no authority thereafter to deny any appropriation for a lawful purpose if within the income and revenue provided.*" [Emphasis added].

*All statutory references are to the enactments in force at the time the transactions in suit took place.*

5. Although not applicable here, we note that the 1981 Legislature enacted the County Budget Act (S.L.1981, c. 166, pp. 320–328, 19 O.S. 1981 §§ 1401 et seq.) which provides a new budgetary procedure for county governments with a population of two hundred thousand (200,000) or more. A county which qualifies may elect to come under the Act's provisions.

6. 68 O.S.1971 § 2483; 19 O.S.1971 § 345.

7. 68 O.S.1971 § 2485.

8. 19 O.S.1971 § 640.

9. 68 O.S.1971 §§ 2483 and 2485; 68 O.S.Supp. 1977 § 2484.

10. 19 O.S.1971 § 345; 68 O.S.1971 § 2483.

11. 19 O.S.1971 § 640.

and financial statement to the Board by July 10th.[12]

B. *The Board's Budget Review Process*

The Board functions as a watchdog agency which is empowered to require adequate and accurate reporting of finances and expenditures for all budgets and supplemental purposes and to review all appropriations and requests to determine if they are legal and adequately funded.[13]

Before June 30th of each year, the Board provides principal officers of the county with an estimate of anticipated revenues for the coming year and conducts a budget planning conference with them to discuss personnel needs.[14] The Board then convenes the first Monday in July to examine the county budget.[15] At this meeting it also fixes the time and place for public hearings on the estimated needs certified by each of its municipalities.[16] The Board receives financial statements from the various segments of county government (i.e. Commissioners, municipalities, etc.). In reviewing the financial statements, the Board (a) checks for the legality of estimated needs,

(b) sees that all mandatory items are included and (c) computes the total means available for each fund.[17] After the financial statements and estimates of needs have been reviewed, public hearings have been held and necessary changes are made in the estimate of needs, the budget is approved by the Board and filed in the county clerk's office.[18]

■ In the instant case, a member of the Board met with various heads of county government at a budget planning conference as provided by 19 O.S.Supp.1979 § 180.65 G. The deputies urge that the statements made by a Board member at these preliminary sessions—to the effect that the county officers should include in their estimate of needs maximum salary increases for deputies—constitute an appropriation within the meaning of 68 O.S.1971 § 2486 which the Board may not later reduce.

We cannot agree. The § 180.65 G conference is but a preliminary step in the budget planning process. It occurs well in advance of the budget review process and

---

12. 68 O.S.1971 § 2483.

13. The Board is declared by law an agency of the state and is part of the system of checks and balances required by the State Constitution. 68 O.S.1971 § 2486.

14. 19 O.S.Supp.1979 § 180.65 G.

15. At this meeting, the Board organizes by electing one of its members as chairman and another member as vice-chairman for the fiscal year. 68 O.S.1971 § 2486. The Board is required to continue to meet until "all of the levies shall have been fixed and the appropriations approved." 68 O.S.1971 § 2494.

16. 68 O.S.1971 § 2492.

17. More specifically, the Board in the budget-examining process, [1] *Studies* the financial statement to ascertain the county's true financial status and may require additional statistics. 68 O.S.Supp.1979 §§ 2487(1) and 2488; [2] *Examines* the items and amounts included in the estimate of needs and (a) omits any *not authorized by law* or *in excess of needs,* (b) reduces the amount of any lawful item that exceeds the authorized appropriation and (c) leaves unchanged any item and amount that

stands within the law. 68 O.S.Supp.1979 § 2487(2); [3] If the estimate of needs does not adequately provide for all mandatory governmental functions, (a) the Board may prepare and publish an estimate of needs and then submit the estimate to the Commissioners for consideration, (b) the Commissioners may, upon finding that its original estimate is inadequate file a written request with the Board to increase the estimate for any item, mandatory or not; 68 O.S.Supp.1979 § 2487(3); [4] *Computes* total revenues available to each fund, except the sinking fund. 68 O.S.Supp.1979 § 2487(4); [5] *Approves* the estimate of needs and computes the tax levy (68 O.S.Supp.1979 § 2497) if all the items and amounts are legal and within the county's lawfully available income; revises the whole budget or parts thereof if the estimates of needs exceed the lawful available income. 68 O.S.Supp.1979 § 2487(5); [6] *Holds* public hearings. 68 O.S.1971 § 2492; [7] *Approves* the budget.

18. The county clerk, acting as secretary to the Board, files an original copy of the approved budget in the county clerk's office and forwards a signed copy to the State Auditor and Inspector.

before the estimates of needs have been submitted. No action taken by individual board members at this stage of the budget process can be construed as constituting an appropriation under § 2486. The term "appropriation" is defined by 68 O.S.1971 § 2482 as being "synonymous with 'estimate made and approved'".[19] Approval within the meaning of "estimate made and approved" occurs at the conclusion of the budget review process—not at the initial budget planning stage. The several items of estimated needs, when approved by the Board, constitute an appropriation of funds for the purposes named in the estimate.[20] When the budgetary planning, review and approval process is completed, the Board's power to deny an appropriation is limited by the provisions of 68 O.S.1971 § 2486.[21] Any suggestions made by Board members at the budget planning conference cannot be construed as constituting approval of a final budget item.

In short, none of these statutory provisions authorize an appropriation for salaries prior to the completion of the statutory scheme for budgetary review and approval. The meeting by a single Board member with county officials in the instant case can be considered no more than a budget planning session as authorized by 19 O.S.Supp. 1979 § 180.65 G.

**19.** The terms of 68 O.S.1971 § 2482 provide: "The term 'appropriation' as used in Sections 2482–24113 of this Code is hereby declared to be synonymous with 'estimate made and approved,' as defined in 62 O.S.1961, § 473...."

**20.** An "item of appropriation" in 68 O.S.Supp. 1979 § 2490 is "the estimate made and approved [by the Board]...." The "items of appropriation" are categorized in § 2490 under such headings as "personnel services", "maintenance and operation" and "capital outlay".

**21.** The statutes narrowly limit the situations in which the Board is empowered to reduce the budgets after they have gone through the budgetary review and approval process. 68 O.S. Supp.1979 § 24101, subdiv. 3. Reductions are allowed when entitlements from federal funds are less than estimated. 68 O.S.Supp.1977 § 2484 B. They may also occur as a result of taxpayer protests. 68 O.S.Supp.1979 § 24103.

## II.

### THE COUNTY EXCISE BOARD HAS DISCRETIONARY AUTHORITY TO ESTABLISH SALARY RATE FOR DEPUTIES

The statutory scheme for determining compensation of first and second deputies or assistants and the number of deputies for each office is found in 19 O.S.Supp.1979 § 180.65. That section provides for salary limits computed on a percentage of the principal officer's salary—90% for the first deputy and 80% for the second. The amounts authorized for salaries within this limitation are those (1) which the principal officer may propose and establish the need for *and* (2) which the Board may approve.[22] Approval in this sense occurs after the budgetary review process and is synonymous with "final budget approval".

The "salary or rate of pay" is based upon "responsibility, risks, skills, training, and experience required for such position and afforded by the subordinate".[23] The Board may reduce the salaries listed in the estimate of needs—prior to budget approval— when (a) the needs exceed the means, (b) any items in the estimates are considered to be in excess of needs or (c) any item is unlawful.[24]

■ In the instant case, the Board's power to establish salary rates for deputies in county offices is based on 1979 legislative

Our decision in *Neel v. Board of County Commissioners of Cherokee County,* Okl., 617 P.2d 201 [1980] is not applicable here. The controversy in *Neel* centered around a budget request for the 1977–1978 fiscal year. The law governing the county budgetary scheme was significantly changed in 1979. The pre-1979 budget scheme in *Neel* did not require salary and staffing approval by either the Board or the Commissioners. In the present case, the Board not only has such discretion but it has the power to reduce budget requests that are in excess of needs.

**22.** 19 O.S.Supp.1979 § 180.65 A.

**23.** 19 O.S.Supp.1979 § 180.65 D.

**24.** 68 O.S.Supp.1979 § 2487(2).

amendments to the county budget process. The pre-1979 legislative history of 19 O.S. 1981 § 180.65 and 68 O.S.1981 § 2487 reveals that the Board had a limited role in reviewing the needs of local government. Under the 1971 version of § 180.65, county officers had to secure the approval of the *county commissioners* in order to establish the number of deputies for the county offices and to fix their salary rate. Legislative amendments in 1976 eliminated the commissioners' authority to review salary and staffing needs.[25] That authority was reposed solely in the county officers. When § 180.65 was amended in 1979, it placed in the *county excise boards* the power to review requests for salaries and staffing and required that the county excise boards meet with the elected officers in a budget planning conference to discuss personnel needs and disclose anticipated revenues. The 1979 legislature, in the same bill by which § 180.65 was amended, made another significant change in the county budget process. The terms of 68 O.S.1971 § 2487 were amended to authorize county excise boards to strike from the budget requests items that are "in excess of needs". The 1979 changes in the statutory scheme evince clear legislative intent to give county excise boards discretion to approve salaries as well as to reduce the amount requested when the proposed budget reflects that the salary rate is in excess of needs.

■ When the discretion to approve salaries inhered in the county commissioners under the pre-1976 budgetary scheme, we said that it "was not an absolute discretion and is not discretion that can be exercised arbitrarily or capriciously."[26] This principle obtains in the instant case. Whether the Board has acted arbitrarily, or in abuse of legal discretion, is to be determined by the facts in the particular case.[27]

The record reveals that the plaintiffs (deputies) received a monthly salary increase of approximately $80, or a 15% increase over the previous fiscal year, bringing their monthly salaries up to $600 or 73% of the principal officer's salary. The principal officers had recommended the maximum salaries allowable by law—90% for the first deputy and 80% for the second. Had the recommended salaries been approved, first deputies stood to receive an annual salary increase of over 40% and second deputies over 25%.

An examination of the record reveals that salary increases had been granted in prior years. The approved $600 monthly salary rate was in keeping with the salaries received by deputies in adjacent counties with a similar tax base. They were also commensurate with the wages of workers in the community doing comparable types of work. None of the deputies said they would quit if the full amount of the raise was not allowed. The defendants indicated that if any of the deputies should quit suitable replacements could be found. The Board took into consideration numerous fiscal factors in reaching its decision of allowing only a 15% salary increase. Among those were the fact that the net valuations of the county had increased by only 5% over the preceding year and that the population had increased only 10% over a five-year period last preceding.

■ The record in the present case does not indicate that the Board's actions were arbitrary. In the Board's opinion, the needs of the county were best met by maintaining salaries at a level commensurate with that in the community and in adjacent counties with similar tax bases. Although the Board did not adopt in full the recommendations of the county officers, it did approve a 15% salary increase. There was no evidence to indicate that the maximum salary rate was needed to meet increased work loads or that there was a need for more qualified personnel or improved community services which could only be met by approval of the recommended salary increases. Neither was it

**25.** S.L.1976, c. 292, pp. 578–579.

**26.** *Nixon v. Roberts*, Okl., 420 P.2d 898, 903 [1966].

**27.** *Board of County Commissioners of Nowata County v. Price*, Okl., 385 P.2d 479, 482 [1963]; *Nixon v. Roberts*, supra note 26.

shown that the Board's decision to reduce the proposed salary increase had a personal motive and did not relate to the Board's legal discretion. In short, the facts and law of this case clearly show that the Board was neither arbitrary nor capricious in the exercise of its judgment and discretion under the 1979 statutory budget scheme.

The trial court's judgment is reversed and the cause is remanded with directions to enter judgment for the defendants.

IRWIN, C.J., BARNES, V.C.J., and LAVENDER, SIMMS, DOOLIN, HARGRAVE and WILSON, JJ., concur.