2003 OK 103

The **TULSA COUNTY BUDGET BOARD** and the Board of County Commissioners of Tulsa County, Ken Yazel, in his Capacity as Tulsa County Assessor and Member of the Tulsa County Budget Board, **Plaintiffs/Appellants,**

v.

The **TULSA COUNTY EXCISE BOARD,** Byron Burke and Janice Lintelman, Members in their Official Capacities, **Defendants/Appellees,**

Independent School District No. 1 of Tulsa County, Oklahoma (The "Tulsa School District"), Independent School District No. 9 of Tulsa County, Oklahoma (The "Union School District"), Independent School District No. 5 of Tulsa County, Oklahoma (The "Jenks School Dis-

trict"), Independent School District No. 3 of Tulsa County, Oklahoma (The "Broken Arrow School District"), District No. 11 of Tulsa County, Oklahoma (The "Owasso School District"), District No. 2 of Tulsa County, Oklahoma (The "Sand Springs School District"), Independent School District No. 13 of Tulsa County, Oklahoma (The "Glenpool School District"), Independent School District No. 8 of Tulsa County, Oklahoma (The "Sperry School District"), Independent School District No. 14 of Tulsa County, Oklahoma (The "Liberty School District") and Tulsa Technology Center School District, d/b/a Tulsa Technology Center (The "Tulsa Technology Center"), Intervenor Defendants/Appellees.

No. 98,780.

Supreme Court of Oklahoma.

Dec. 2, 2003.

Robert A. Nance, Gretchen M. Schilling, Oklahoma City, OK, for Plaintiffs/Appellants.

Scott D. Boughton, Assistant Attorney General, Oklahoma City, OK, for Defendants/Appellees.

J. Douglas Mann, Jerry A. Richardson, Oklahoma City, OK, for Intervenors/Defendants/Appellees.

KAUGER, J.

¶ 1 The issues presented are: 1) whether the defendant/appellee, Tulsa County Excise Board (Excise Board), has authority to review the budget of the plaintiff/appellant, Tulsa County Assessor (Assessor); and 2) if so, whether the Excise Board abused its discretion or acted arbitrarily or capriciously in reducing the visual inspection budget. We determine that the Excise Board may resolve funding disputes concerning the visual inspection budget. We also determine that the evidence presented does not demonstrate an abuse of discretion in the Excise Board's shift of personnel costs from the visual inspection to the regular budget. Nevertheless, the Excise Board acted arbitrarily in eliminating all valuation costs from the visual inspection budget.

## FACTS

¶ 2 In fiscal matters,[1] Tulsa County operates under the County Budget Act (Budget Act), 19 O.S.2001 § 1401, *et seq.* The Budget Act requires the plaintiff/appellant, Tulsa County Budget Board (Budget Board), to prepare a budget for all county funds.[2] The Budget Board submits all budgets to the Excise Board for examination and approval. The Excise Board has authority to strike or reduce any unlawfully budgeted amount.[3]

¶ 3 Assessors are required to conduct a comprehensive countywide program for the individual visual inspection of all taxable property within their respective counties. Under the program, all taxable property must be visually inspected once every four years.[4] The budget for the program is pre-

1. Counties come within the County Budget Act (Budget Act), 19 O.S.2001 § 1401, *et seq.* when a county's governing body elects to come under and comply with the Budget Act's provisions and requirements. 19 O.S.2001 § 1403.

2. Title 19 O.S.2001 § 1408.

3. Title 19 O.S.2001 § 1414 provides in pertinent part:
   "A. The county excise board shall examine the county budgets. The excise board may take the following actions on the budgets:
   1. For any items or amounts which are not authorized by law or which may be contrary to law, the unlawful amounts or items shall be stricken and disregarded;
   2. Any amount which exceeds the lawful amount authorized by law shall be reduced to the extent authorized by law ..."

4. Title 68 O.S.2001 § 2820 provides in pertinent part:
   "A. Each county assessor shall conduct a comprehensive program for the individual visual inspection of all taxable property within his respective county. Each assessor shall thereafter maintain an active and systematic program of visual inspection on a continuous basis and shall establish an inspection schedule which will result in the individual visual inspection of all taxable property within the county at least once each four (4) years....
   C. Prior to the beginning of the first visual inspection cycle and each subsequent visual inspection cycle, the county assessor shall develop a plan that details the number of real property parcels to be inspected in each year of the cycle by use category, geographic area or other basis, the resources and budget proposed to complete the inspections and the valuation methodology to be used in determining the fair cash value of the real property and improvements thereon. The plan shall be adequate to ensure the visual inspection of all parcels of real property within the county at least once each four (4) years. The plan shall also be adequate to ensure that the information collected from the visual inspection of real property each year is sufficient to establish a representative sample from each use category in order to conduct the proper valuation of all taxable property within each use category in order to conduct the proper valuation of all taxable property within each use category by means of an accepted standard for mass appraisal practice. The county assessor shall submit the proposed plan to the Oklahoma Tax Commission by the first working day in October preceding the beginning of the four-year cycle. The Oklahoma Tax Commission shall either approve the plan if the plan and resources are adequate to complete the cycle and if the plan will result in a representative sample from each use category in order to value all taxable property each year or shall correct and modify the plan in order to establish a program for visual inspection that will be completed by the end of the cycle and that will provide a representative sample from each use category in order to value all taxable property each year. An approved plan shall be made for each county as of the beginning date of each

pared separately from the Assessor's regular budget[5] and both are submitted to the Budget Board for consideration.

¶ 4 For fiscal year 2002–2003, the Budget Board approved the Assessor's general budget in the amount of $2,605,330 and a visual inspection budget of $3,169,835. It is undisputed that the total dollar amount of the combined budgets is reasonable and necessary for operation of the Assessor's office.

¶ 5 Both of the proposed budget amounts were submitted to the Excise Board for approval. As mill fund recipients and entities responsible for funding of the visual inspection budget, the school districts appeared before the Excise Board on June 28, 2002, to protest the budget as excessive.[6] A motion to approve the Assessor's budgets was tabled.

¶ 6 Following the June meeting, Byron Burke, as Chairman of the Excise Board (Chairman), questioned the nature of the visual inspection budget and the items included in the program. In comparing figures between Oklahoma County and Tulsa County, Burke's inquiries revealed that, over a four-year period, Tulsa County spent $4.6 million more than Oklahoma County to inspect 42,500 fewer parcels—Oklahoma County budgeted $7.11 million to visually inspect 276,000 properties while Tulsa County expended $11.47 million to inspect 233,500 locations. Oklahoma County's per-parcel inspection cost was $25.75 as compared to a per-parcel inspection cost of $49.14 in Tulsa County.[7] An analysis of the salaries included in the Tulsa County budget revealed that: 1) the highest paid employees had been placed in the visual inspection program and that the lower salaried employees were listed in the

cycle and a copy of such plan shall be filed with the Oklahoma Tax Commission.
D. Each year the county assessor shall submit a progress report to the Oklahoma Tax Commission indicating the number of real property parcels inspected by use category, geographic area or other basis, the resources and budget expended in the last completed fiscal year and the valuation methodology used to determine fair cash values of the real property and improvements. The Oklahoma Tax Commission shall correct and modify any visual inspection plan during the four-year cycle if progress reports indicate that inspection of real property parcels will not be completed or will be performed in violation of legal requirements for such inspections. The county assessor shall be required to complete the four-year cycle in accordance with such plan as corrected and modified...."
Title 68 O.S.2001 § 2822 provides:
"A. Each county assessor in budgets submitted to the county excise board or county budget board shall make adequate provision to effect countywide visual inspections of real property during the four-year cycle.
B. Each jurisdiction within a county which receives revenue from an ad valorem mill rate shall receive a copy of the budget for the countywide visual inspection program for that county. The county excise board or county budget board shall notify all such jurisdictions of any meetings at which discussion or action on the budget for the comprehensive program of visual inspections is or may be on the agenda. Such jurisdictions shall have the opportunity to appear before the county excise board or the county budget board, prior to approval of such budgets, to provide testimony, comments, information and documentation concerning the budgets submitted by the county

assessor pursuant to subsection A of this section.
C. The several county excise and budget boards, in passing upon budgets submitted by the several assessors, shall authorize and levy amounts which will suffice to carry out the countywide visual inspection program as approved by the Oklahoma Tax Commission under Section 2820 of this title. Such amounts shall be separate from other funds allocated to the office of county assessor and shall be used exclusively to carry out the countywide visual inspection program. The allocation of such amount shall not serve to decrease other funds allocated to the office of county assessor by the county excise board or the county budget board. Any disputes as to the amount authorized to carry out the countywide visual inspection program shall be resolved by the county excise board; provided, the Oklahoma Tax Commission shall take such action as may be necessary to ensure that such amounts are used exclusively to carry out the countywide visual inspection program and that the allocation of such amounts does not serve to decrease other funds allocated to the office of the county assessor."

5. Title 68 O.S.2001 § 2822(C), see note 4, supra.

6. Mill rate recipients may appear before the excise board or the county budget board to provide testimony, comments, information and documentation concerning budgets submitted by the county assessor. Title 68 O.S. § 2822(B), see note 4, supra.

7. Defendant's Exhibit 1, letter of June 21, 2002, from Byron Burke to Jack Gordon.

general budget;[8] 2) although under 68 O.S. § 2823(C),[9] salaries may be prorated between the general budget and visual inspection program, several appraisers who did both visual inspection work and had general office duties were being paid solely out of the visual inspection budget;[10] and 3) an employee's function, or assignment, did not control the budget from which salaries were drawn.[11]

8. Transcript of proceedings, December 6, 2002, Byron Burke testifying at p. 125.

9. Title 28 O.S. Supp.2002 § 2823 provides in pertinent part:
   "A. For each fiscal year, the cost of the comprehensive program of visual inspections for real property and the cost of physical inspections of personal property shall be paid by appropriate warrants from those who receive the revenues of the mill rates levied on the property of the county as prescribed by this section. School districts are hereby authorized to pay such costs from revenues accruing to their building funds. The county assessor shall prepare a budget for the comprehensive program of visual inspections for each property and the cost of physical inspections of personal property and file such budget with the county excise board or county budget board.
   B. The county excise board or county budget board shall apportion such cost among the various recipients of revenues from the mill rates levied, including the county, all cities and towns, all school districts, all sinking funds of such recipients, and all jurisdictions specified in subsection D of this section, in the ratio which each recipient's total tax collection authorized from its mill rates levied for the preceding year bears to the total tax collection authorized of all recipients from all their mill rates levied for the preceding year. The costs shall include only those expenses directly attributable to the visual inspection program and those expenses directly attributable to physical inspections of personal property and shall not include any expenses of the office of the county assessor which, in the judgment of the county excise board or county budget board, are expenses of county assessor's office which would exist in the absence of such program or in the absence of physical inspection of personal property. Expenses that are attributable both to the visual inspection program and physical inspection of personal property, and which would exist in the absence of such program or inspection, including but not limited to salaries, employee benefits, office supplies and equipment, may be prorated; provided, no portion of the salary of the county assessor shall be included in such costs.
   C. Upon receipt of the billing statement provided for in subsections D and E of this section by each such recipient, the mill rates to be established by the board for each such recipient for the current year shall include and be based upon such amounts and shall constitute an appropriation of such amounts to the county assessor for expenditure for the expenses of administering the visual inspection program each year. In the case of a sinking fund of a recipient, if, after approving its budget, the governing body of a recipient notifies the board in writing that there are no funds appropriated to pay the amount of the billing statement for such sinking fund, such notice shall constitute conclusive evidence of a financial obligation of the recipient as it relates to such sinking fund. The board may seek a judgment for the amount of such obligation and court costs in the district court of the county in which the board is located.
   D. The county assessor shall render a statement to. each of the jurisdictions within the county which receive revenue from an ad valorem mill rate. Such statement shall include the following information:
   1. The current fiscal year in which the charge has been incorporated in the jurisdiction's budget;
   2. All jurisdictions receiving statements from the county assessor, the mill rate for each in the previous year, and the proportion of each to the combined mill rates of all jurisdictions within the county for the previous year. The proportions specified in this paragraph should equal a total of one hundred percent (100%);
   3. The charge for the entity receiving the statement as well as the charge for each jurisdiction of the county based upon the proportions specified in paragraph 2 of this subsection. The total of all current year charges for all county jurisdictions shall equal the total visual inspection program budget for the current fiscal year;
   4. The amount of the total budget for the office of the county assessor and the percentage that visual inspection program expenses are of such total budget; and
   5. A copy of the County Budget Visual Inspection Account and a brief description of the areas to be visually inspected for the current fiscal year, consistent with the plan on file with the Oklahoma Tax Commission pursuant to Section 2820 of this title...."
   Section 2823 was amended effective June 6, 2002.

10. Transcript of proceedings, Byron Burke testifying at p. 131.

11. Transcript of proceedings, December 6, 2002, Byron Burke testifying at p. 131. The Budget Board, County Commissioners and Assessor argue in the brief in chief filed on April 21, 2003, that salaries were actually prorated and that salaries followed function. However, the transcript of proceedings, December 6, 2002, testimony of the Assessor provides at p. 84 that salary payments did not follow the employees' functions.

¶ 7 After the Assessor informed the Excise Board that statutory law provided no clear guidance as to the separation of charges between the visual inspection and general budgets and that the respective excise boards and assessors in the state's seventy-seven counties could not agree on which charges belong in either budget,[12] guidance was sought from the Oklahoma Tax Commission (Tax Commission). Although 68 O.S. 2001 2820(C) [13] and Tax Commission Rules [14] require that the Assessor submit the visual inspection plan to the Tax Commission for approval,[15] testimony elicited indicates that the Tax Commission reviews the plan only to determine whether it contains the minimum elements to accomplish the required inspections. Furthermore, the Tax Commission is largely unconcerned with the actual budgetary amount—if the monies allocated are adequate to accomplish the plan's goals.[16] Finally, in the Tax Commission's report to the Legislature, it recommended that the minimum number of employees necessary to carry out the visual inspection program for Tulsa County as twenty-two while the Assessor's payroll records indicate that fifty-five employees would be paid out of the visual inspection budget.[17]

¶ 8 On July 9, 2002, the Excise Board adopted a revised budget for the Assessor—cutting $1,889,835 from the visual inspection budget and recommending that the Budget Board fund the cut to the Assessor's budget in another manner, i.e. by adding the amount to the Assessor's general budget.[18] In making the decision to adjust the visual inspection budget, the Excise Board approved the inclusion of salaries for thirty-two employees—ten more than recommended as a minimum number by the Tax Commission. It struck all expenses related to valuation—a budgetary item traditionally included in all of the seventy-seven county assessors' visual inspection budgets.[19]

¶ 9 The Budget Board, County Commissioners and Assessor filed a petition for writ of mandamus and request for declaratory judgment and injunctive relief in the district court on September 24, 2002. On October 9, 2002, various Tulsa County school districts (School Districts) intervened. The matter was tried to the court on December 6, 2002.

The possibility that different individuals might consider the same facts and draw differing inferences is one of the reasons that review in this Court is limited to the issues shown by the record to have actually been presented and tendered to the trial court. *Kincaid v. Black Angus Motel, Inc.,* 1999 OK 54, ¶ 23, 983 P.2d 1016; *Hughey v. Grand River Dam Auth.,* 1995 OK 56, ¶ 9, 897 P.2d 1138.

12. Defendant's Exhibit 3, letter of June 27, 2002, from Jack F. Gordon to the Excise Board members.

13. Title 68 O.S.2001 § 2820(C), see note 4, supra.

14. Okla. Admin Code 710:10–10–1 provides in pertinent part:

"... (b) Each county assessor shall submit a visual inspection plan, which conforms to the requirements described in 68 O.S.1991, §§ 2820(c) [sic] and the provisions of this Subchapter, to the Ad Valorem Division of the Oklahoma Tax Commission by the first working day in October preceding the January 1 beginning of a new four-year cycle. The county shall keep a copy of the approved visual inspection plan and any amendment(s) on file for the current four year-cycle and shall retain the plan for five years after the last year of this cycle...."

The Tax Commission is authorized to make and publish rules pursuant to 68 O.S.2001 § 2825.

15. The County Assessor received a letter on November 18, 2002, indicating that the Tax Commission had received and approved the four-year visual inspection plan.

16. Transcript of proceedings, December 6, 2002, Byron Burke testifying at p. 145. The Tax Commission approved visual inspection plans for both Oklahoma and Tulsa counties. It is instructive that the plan approved for Tulsa County was at twice the budget amount of the Oklahoma County plan despite the fact that Oklahoma County must inspect more properties annually than Tulsa County inspects. See, transcript of proceedings, December 6, 2002, Byron Burke testifying at p. 147.

17. Plaintiff's exhibit 6, apparently a document prepared for the Excuse Board for consideration on July 9, 2002.

18. Minutes, Excise Board Meeting, July 9, 2002. Transcript of proceedings, December 6, 2002, Jack Gordon testifying at pp. 47–48.

19. Transcript of proceedings, December 6, 2002, Jack Gordon testifying at p. 43.

The trial judge, Honorable Deborah C. Shallcross, issued an order on December 26, 2002, denying the request for a writ of mandamus or injunction and refusing to allow an amendment to the petition requesting that the school districts be required to place the originally computed reimbursement amounts for the visual inspection program in their respective budgets. In so ruling, the trial court found that the Excise Board: had final approval authority over the Assessor's budget; exercised its discretion in reviewing the budget; and did not act in an arbitrary or capricious manner. Pursuant to 12 O.S.2001 § 990.5, the order stands stayed without the execution of a supersedeas bond.

¶ 10 On January 24, 2003, the Budget Board, the County Commissioners and the Assessor appealed requesting that the cause be retained. We retained the cause on March 14, 2003. On May 22, 2003, the court-ordered briefing cycle was completed.

## I.

¶ 11 **THE COUNTY EXCISE BOARD IS AUTHORIZED TO RESOLVE FUNDING DISPUTES RELATED TO THE VISUAL INSPECTION PROGRAM.**

¶ 12 The Assessor submitted Tulsa County's proposed visual inspection plan [20] to the Tax Commission for 2003 2006 on September 26, 2002. The plan was approved on November 14th. The County Commissioners and the Assessor argue that the statutory scheme limits the Excise Board's discretion in altering the visual inspection budget to upholding the visual inspection plan approved by the Tax Commission.[21] The Excise Board

---

**20.** The statutory visual inspection program is a comprehensive statewide regime for gathering data about real property from its physical examination to establish the fair cash values of properties so inspected at least once every four years and the fair cash values of similar properties on an annual basis. Title 68 O.S.2001 § 2802 provides in pertinent part:

"As used in Section 2801 et seq. of this title: . . . 30. 'Visual inspection program' means the program required in order to gather data about real property from physical examination of the property and improvements in order to establish the fair cash values of properties so inspected at least once each four (4) years and the fair cash values of similar properties on an annual basis. . . ."

Title 68 O.S.2001 § 2821 provides in pertinent part:

"A. Each county assessor shall cause real property to be physically inspected as part of the visual inspection cycle and shall require such examination as will provide adequate data from which to make accurate valuations. B. The information gathered from the physical inspection shall be relevant to the type of property involved, its use category, the valuation methodology to be used for the property, whether the methodology consists of the cost approach, an income and expense approach or sales comparison approach, and shall be complete enough in order to establish the fair cash value of the property in accordance with accepted standards for mass appraisal practice. . . ."

See also, 68 O.S.2001 § 2820(A), see note 4, supra.

At the beginning of each four-year cycle, assessors must develop and submit to the Tax Commission a plan detailing: the number of real property parcels inspected each year; the pro-

posed resources and budget to complete the inspections; and the valuation methodology utilized to detail fair cash values. Title 68 O.S.2001 § 2820(C), see note 4, supra. County assessors must make adequate provision for the visual inspection project and submit it to the county budget board or excise board. Title 68 O.S.2001 § 2823(A), see note 9, supra. The visual inspection budget is prepared separately from the assessor's general budget. Amounts allocated to the visual inspection program are used exclusively to carry out the program. Title 68 O.S.2001 § 2822(C), see note 4, supra. The cost of the visual inspection program is apportioned among the various recipients of revenues from the mill rates levied—including all school districts. However, the assessed costs may include only those expenses directly attributable to the visual inspection program. The costs shall not include any expenses of the office of the county assessor which, in the judgment of the county excise board or county budget board, are expenses of the assessor's office existing in the absence of the program. Expenses which are attributable to the visual inspection program and which would exist without the program, *i.e.* salaries, employee benefits, office supplies and equipment, may be pro-rated between the assessor's two budgets. Nevertheless, no portion of the assessor's salary may be included in the cost of the visual inspection program. Title 68 O.S.2002 2823(B), see note 9, supra.

**21.** The Budget Board, County Commissioners and Assessor contend in the reply brief filed on May 22, 2003, that they have not argued that the Tax Commission's approval of the visual inspection plan makes the budget for that plan immune from revision by the Excise Board. The contention is unconvincing in light of statements made in the same parties' brief in chief filed on April 21, 2003, providing in pertinent part:

and the School Districts contend that the statutory language does not support such an argument.[22] We agree.

¶ 13 The Excise Board's general supervisory powers over the budgeting process are contained in 19 O.S.2001 § 1414. Under the statute, the Excise Board may strike and disregard any amounts deemed unlawful or reduce figures exceeding legally supported appropriations.[23] Section 2820(C) of title 68[24] requires that county assessors submit their four-year visual inspection plans to the Tax Commission for approval. If those plans are found wanting, the Tax Commission may modify the plan to ensure the four-year cycle is completed and adequate property use samples are collected for valuation purposes. Budgeting disputes relating to the visual inspection program are specifically addressed in 68 O.S.2001 § 2822(C). The statute provides in pertinent part:

"... **Any disputes as to the amount authorized to carry out the countywide visual inspection program shall be resolved by the county excise board;** provided, the Oklahoma Tax Commission shall take such action as may be necessary to ensure that such amounts are used exclusively to carry out the countywide visual inspection program and that the allocation of such amounts does not serve to decrease other funds allocated to the office of county assessor." [Emphasis supplied.]

The Legislature has used clear and mandatory language[25] in the statute stating that

---

at p. 2 "... *In Plaintiffs' view, funding the Tax Commission-approved program is the standard against which the actions of the parties must be measured....*" [Emphasis in original.]
at p. 8 "... **PROPOSITION I AUTHORITIES MUST FUND THE VISUAL INSPECTION *PROGRAM* APPROVED BY THE TAX COMMISSION.** ..." [Emphasis in original.]

**22.** In determining whether a statute applies to a given set of facts, we focus on legislative intent [*Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438; *Cooper v. State ex rel. Dept. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466] which controls statutory interpretation. Intent is ascertained from the whole act in light of its general purpose and objective [*Keating v. Edmondson*, 2001 OK 110, ¶ 8, 37 P.3d 882; *McSorley v. Hertz Corp.*, 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 8, 832 P.2d 834] considering relevant provisions together to give full force and effect to each. *Haney v. State*, 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n*, 1992 OK 153, ¶ 8, 842 P.2d 750. When a special statute clearly includes the matter in controversy, the special statute controls over a statute of general applicability. *Davis v. GHS Health Maintenance*, 2001 OK 3, ¶ 10, 22 P.3d 1204; *Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Board of County Comm'rs of Tulsa County*, 1988 OK 44, ¶ 13, 959 P.2d 979; *Carter v. City of Oklahoma City*, 1993 OK 134, ¶ 11, 862 P.2d 77. The Court presumes that the Legislature expressed its intent and that it intended what it expressed. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449; *Darnell v. Chrysler Corp.*, 1984 OK 57, ¶ 5, 687 P.2d 132. Statutes are interpreted to attain that purpose and end [*Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d 800, *cert. denied*, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State ex rel. Oklahoma Tax Comm'n*, 1979 OK 62, ¶ 5, 594 P.2d 1210; *Affiliated Mgt. Corp. v. Oklahoma Tax Comm'n*, 1977 OK 183, 570 P.2d 335] championing the broad public policy purposes underlying them. *Haggard v. Haggard*, 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.*, 1991 OK 50, ¶ 7, 812 P.2d 1355. Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed. *State ex rel. Dept. of Human Serv. v. Colclazier*, 1997 OK 134, ¶ 9, 950 P.2d 824; Matter of *Estate of Flowers*, 1993 OK 19, ¶ 11, 848 P.2d 1146.

**23.** Title 19 O.S.2001 § 1414 provides in pertinent part:
"A. The county excise board shall examine the county budgets. The excise board may take the following actions on the budgets.
1. For any items or amounts which are not authorized by law or which may be contrary to law, the unlawful amounts or items shall be stricken and disregarded;
2. Any amount which exceeds the lawful amount authorized by law shall be reduced to the extent authorized by law ..."

**24.** Title 68 O.S.2001 2820(C), see note 4, supra.

**25.** Generally, when the Legislature uses the term "shall", it signifies a mandatory directive or command. *Keating v. Edmondson*, see note 22 at ¶ 13, supra; *United States* through *Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman*, 1991 OK 59, ¶ 8, 814 P.2d 147; *Forest Oil Corp. v. Corporation Comm'n*, 1990 OK 58, ¶ 26, 807 P.2d 774. Nevertheless, the term can be used permissively. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d

funding disputes shall be resolved by the Excise Board. Under the statute, the Tax Commission's role is limited to ensuring that—once the excise board has made a funding determination—amounts allocated by the excise board to the visual inspection program are used exclusively for the program's purpose and that funds so apportioned are not utilized to decrease the assessor's general obligation funds.

¶ 14 *Clay v. Independent School Dist. No. 1 of Tulsa County*, 1997 OK 13, 935 P.2d 294, like the instant cause, involved the visual inspection program in Tulsa County. In *Clay*, the Court was asked to determine whether school districts were required to pay the costs of the visual inspection program as budgetary items or whether the payment could be deducted from sinking funds. Although we held that payment could not be made from the school districts' sinking funds, we determined that an assessor could compel payment by filing an original action in the District Court for a writ of mandamus during the fiscal year, and, if necessary, for the amount to be included in the school district's budget allowing for recovery outside the fiscal year.

¶ 15 *Clay* also involved the authority of the Excise Board to determine the Assessor's

budget. The school districts challenged the Assessor's placement of twenty-two employees in the revaluation budget. The school districts did not present evidence to show the Excise Board's abuse of discretion in approving the budget or in the trial court's upholding of the decision. Therefore, the school districts were denied relief. In doing so, this Court specifically recognized that "[T]he Excise Board has discretion in determining the budget of the Assessor." [26]

¶ 16 To adopt the County Commissioner's, the Budget Board's and the Assessor's position—that the Tax Commission's approved plan governs funding disputes—we would be required to read a nonexistent exception into the specific statutory mandate of 68 O.S.2001 § 2822(C) [27] providing that it is the Excise Board which will resolve funding disputes relating to the visual inspection program. Additionally, we would have to ignore our decision in *Clay v. Independent School Dist. No. 1 of Tulsa County*, 1997 OK 13, 935 P.2d 294 recognizing the Excise Board's discretion in determining the Assessor's budget. We decline to do so.[28] Instead, we determine that the Excise Board has discretion in resolving funding disputes concerning the visual inspection budget.[29]

1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶ 0, 619 P.2d 869.

26. *Clay v. Independent School Dist. No. 1 of Tulsa County*, 1997 OK 13, ¶ 31, 935 P.2d 294. See also, *Humphrey v. Denney*, 1988 OK 69, ¶ 15, 757 P.2d 833 [An assessor's hiring of personal is subject to the approval by the excise board in its annual budget review.]. The time-line requirements of the budgetary process as compared with the approval process before the Oklahoma Tax Commission also support a finding that it is the Excise Board, not the Tax Commission, which is the entity to approve budgetary requirements. County budget boards are required to complete budgets for upcoming fiscal years at least thirty days before the beginning of each fiscal year—July 1st. Title 19 O.S.2001 § 1410. After conducting public hearings, [Title 19 O.S.2001 § 1412], the County Budget Board must adopt a budget no less than seven days prior to the beginning of the budget year. Title 19 O.S.2001 1413. Pursuant to 68 O.S.2001 § 2820(C), see note 4, supra, the visual inspection plan for

Tulsa County for the years 2003 2006 was not due to be filed with the Tax Commission until September, 30, 2002—a date well beyond the time frame within which the County Budget Board was required to complete preparation of the budget for the Assessor's office. Had the Legislature intended for the Tax Commission to control the visual inspection budget, undoubtedly it would have required approval of the proposal prior to, rather than a date some three months following, the scheduled completion of the county budgetary process.

27. Title 68 O.S.2001 § 2822(C), see note 4, supra.

28. *Keating v. Edmondson*, see note 25 at ¶ 14, supra. See also, *Chamberlain v. American Airlines*, 1987 OK 62, ¶ 15, 740 P.2d 717; *City of Bethany v. District Court of Oklahoma County*, 1948 OK 38, ¶ 16, 191 P.2d 187; *City of Bristow v. Groom*, 1944 OK 223, ¶ 11, 151 P.2d 936.

29. See also, 19 O.S.2001 § 1414, note 3, supra.

## II.

¶ 17 **THE EVIDENCE PRESENTED DOES NOT DEMONSTRATE AN ABUSE OF DISCRETION IN THE EXCISE BOARD'S SHIFT OF PERSONNEL COSTS FROM THE VISUAL INSPECTION TO THE REGULAR BUDGET.**

¶ 18 Having concluded that the Excise Board has authority to review the Assessor's budget, we must now consider whether the Excise Board acted arbitrarily and whether the trial court abused its discretion in failing to give relief to the Budget Board, the County Commissioner and the Assessor.[30] In doing so, we review the Excise Board's actions in moving employee salaries from the visual inspection budget to the Assessor's general budget and its deletion of all valuation costs from the visual inspection budget.[31]

¶ 19 In cutting the number of employees' salaries to be included in the visual inspection budget, the Excise Board considered the minimum number of employees recommended by the Oklahoma Tax Commission—ten field and twelve office personnel. Looking to the number of parcels requiring visual inspection under the program, the Excise Board doubled the number of recommended field personnel and kept the office personnel number at the recommended twelve.[32] This left field personnel with the responsibility of inspecting approximately fifteen parcels per day as opposed to the twenty to twenty-five inspections the Assessor felt would be possible.[33]

¶ 20 The Assessor admits that as many as four employees' salaries may have been listed for payment out of the visual inspection budget when they actually should have been paid out of the general budget.[34] In addition, he conceded that in it's 2001 report to the Legislature, the Tax Commission estimated that Tulsa County needed twenty-two employees to carry out the visual inspection program.

¶ 21 The Budget Board, the County Commissioners and the Assessor had the

---

**30.** *Clay v. Independent School Dist. No. 1 of Tulsa County*, see note 26, supra.

**31.** The County Commissioners, Budget Board and Assessor urge us to determine whether the Excise Board abused its discretion in "building a budget" rather than merely striking unlawful amounts from the visual inspection budget pursuant to 19 O.S.2001 § 1414, see note 3, supra. Whether the Excise Board "built" the budget or, through its inquiries concerning items which could lawfully be included in the visual inspection budget, struck unlawful amounts is a distinction without a difference. Furthermore, today, we decline to delineate any and all items which may be included in the visual inspection budget. From the materials before this Court and from the record presented to the trial court, it appears that central issues here concern the shifting of employees from one budget to the other and the elimination of valuation costs. It is also apparent that at least some of the items the County Commissioners, Budget Board and Assessor ask us to determine as valid items of the visual inspection budget may have been included in the final budget adopted by the Excise Board. See, transcript of proceedings, December 6, 2002, Byron Burke testifying at p. 151. Additionally, the County Commissioners, Budget Board and Assessor ask us to determine that the trial court erred in its refusal to allow the amendment of their petition to include a request that the school districts be required to include valuation expenses in their budgets. Although we recognize that amendments are to be liberally allowed when justice so requires [Title 12 O.S.2001 § 2013], we are beyond a time period when an amendment presumably would aid the Budget Board, County Commissioners and Assessor. This Court does not issue advisory opinions or answer hypothetical questions. *Dank v. Benson*, 2000 OK 40, ¶ 7, 5 P.3d 1088; *Keating v. Johnson*, 1996 OK 61, ¶ 0, 918 P.2d 51; *Application of Fun Country Development Auth.*, 1977 OK 138, ¶ 3, 566 P.2d 1167. Furthermore, we are bound by the record presented for review. *Heirshberg v. Slater*, 1992 OK 84, ¶ 5, 833 P.2d 269; *Snyder v. Smith Welding & Fabrication*, 1986 OK 35, ¶ 1, 746 P.2d 168 [Supplemental opinion on rehearing]. Finally, the County Commissioners, Budget Board and Assessor had the burden of showing that the trial court abused its discretion in declining to award relief. *Clay v. Independent School Dist. No. 1 of Tulsa County*, see note 26, supra; *Beatrice Foods Co. v. City of Okmulgee*, 1963 OK 48, ¶ 2, 381 P.2d 863. Furthermore, we note that the indication in their brief in chief that the plaintiffs/appellants sought amendment before a response was filed is misleading. The record reveals that the motion to amend was on November 27, 2002, while the answer was filed on November 7, 2002.

**32.** Transcript of proceedings, Byron Burke testifying at pp. 147–48.

**33.** Transcript of proceedings, December 6, 2002, Byron Burke testifying at pp. 149–50.

**34.** Brief in chief of plaintiffs/appellants, filed April 21, 2003, at pp. 26–27.

burden of showing an abuse of discretion to obtain relief from the Excise Board's shift of employees from the proposed visual inspection budget to the Assessor's regular budget.[35] They have not done so. Therefore, we affirm the trial court's decision upholding the Excise Board's shift of personnel payments from the visual inspection to the Assessor's regular budget.

### III.

¶ 22 **BOTH THE STATUTORY SCHEME AND VALIDLY PROMULGATED ADMINISTRATIVE RULES CLEARLY CONTEMPLATE THAT VALUATION WILL BE INCLUDED IN THE VISUAL INSPECTION BUDGET. THEREFORE, THE EXCISE BOARD ABUSED ITS DISCRETION IN ELIMINATING ALL VALUATION COSTS FROM THE VISUAL INSPECTION BUDGET.**

¶ 23 The Excise Board asserts that the removal of all costs related to the valuation of property from the visual inspection budget is justified under 68 O.S. Supp.2002 § 2823(B),[36] providing that only those expenses relating to the visual inspection program, and no items which would exist in the program's absence, should be included in the program's costs. The Budget Board, County Commissioners and Assessor counter that it is clear in both the statutory language relating to the visual inspection program and in the Tax Commission's rules that the Legislature and the Tax Commission contemplate

that valuation expenses should be budgeted for the visual inspection program.

¶ 24 The Excise Board's argument centers on the theory that, because it is the Assessor's job to assess all real property annually, the expenses of valuation exist outside the visual inspection program and, therefore, are not chargeable to mill fund recipients pursuant to 68 O.S. Supp.2002 § 2823(B).[37] Undoubtedly, Assessors must annually prepare assessment rolls [38] and value the property so assessed [39] for all properties located in their respective counties. Assessors are required to utilize the information gathered from visual inspection, using the data along with other information obtained, to make accurate estimates of fair cash values for all taxable real or personal property within the county.[40]

¶ 25 Recognizing that it is the Assessor's duty to assess all property annually, we might be inclined to accept the argument that 68 O.S. Supp.2002 § 2823(B) [41]—providing that all expenses which, in the judgment of the excise board exist in the absence of the visual inspection program, must be eliminated from the program's budget—requires that valuation costs be cut from the visual inspection program. However, such a result is not supported by other language in § 2823(B) allowing for the proration of expenses when attributable to the program and another source, the numerous statutory references to valuation in the visual inspection statutes, or the Tax Commission Rules specifically referring to and contemplating valuation as a part of the program.

35. *Clay v. Independent School Dist. No. 1 of Tulsa County,* see note 26, supra; *Beatrice Foods Co. v. City of Okmulgee,* see note 31, supra. The same evidentiary burden existed before the trial court. *Rogers v. Excise Bd. of Greer County,* 1984 OK 95, ¶ 15, 701 P.2d 754; *Summey v. Tisdale,* 1982 OK 133, ¶ 18, 658 P.2d 464.

36. Title 68 O.S. Supp.2002 § 2823(B), see note 9, supra.

37. *Id.*

38. Title 68 O.S.2001 § 2817(A)(B); 68 O.S.2001 § 2842(A).

39. Title 68 O.S. Supp.2003 § 2817.

40. Title 68 O.S.2001 § 2829(C) provides:

"Each county assessor shall utilize the information gathered from the visual inspection of real property conducted during each year of the four-year cycle for such inspections and shall conduct such statistical calculations using the data so acquired together with sales price or other information available as may be required to make accurate estimates of fair cash values for all taxable real or personal property within the county each year. The results of such calculations shall be recorded on the assessment roll of the county on an annual basis in order to reflect any increase or decrease in the fair cash value of any property in any year."

41. Title 68 O.S. Supp.2002 § 2823(B), see note 9, supra.

¶ 26 Section 2823(B) of title 68 provides that the visual inspection budget shall contain only those items of expense which would not exist in absence of the program. However, the statute goes on to indicate that, where items of expense are attributable to the visual inspection program and would also exist in its absence, the items—including, but not limited to salaries, employee benefits, office supplies and equipment—may be prorated. Although inartfully drawn, § 2823(B) most certainly indicates that there are some items which will be attributable both to the Assessor's regular budget and to the visual inspection budget. When that contingency exists, § 2823(B) does not, as the Excise Board would have us determine, require that the totality of the expense be attributed to the regular budget. Instead, it allows for the cost item to be prorated between the regular and the visual inspection budgets.

¶ 27 The Legislature defined the visual inspection program as the program required to gather data about real property from physical examination to establish the fair case values of the properties at least once every four years and to provide similar values on like properties on an annual basis.[42] The definition of the program itself indicates that valuation is a component of the program. Furthermore, the Legislature has provided that assessors must develop a plan detailing the resources and budget proposed to complete inspections and the valuation methodologies used to determine fair cash values.[43] When submitting reports to the Oklahoma Tax Commission on the progress of the inspections, the assessor must include the valuation methodologies used to determine fair cash values.[44] Physical examinations are to be conducted in a manner to provide adequate data from which to make accurate valuations[45] and the information gathered must be relevant to the valuation methodology utilized.[46] Clearly, the legislative scheme contemplates that valuation is to be an integral part of the visual inspection program. As part and parcel of the program and as a cost item which relates to the Assessor's other duties, expenses are chargeable both to the Assessor's regular and visual inspection budgets and should be prorated between the two pursuant to 68 O.S.2001 § 2823(B).[47]

¶ 28 Excise boards are required to authorize and levy amounts sufficient to carry out the countywide program of visual inspection approved by the Oklahoma Tax Commission.[48] The Tax Commission is authorized to make and publish rules it deems necessary for the general guidance and assistance of county assessors.[49] Those administrative rules are valid expressions of lawmaking powers having the force and effect of law.[50] Administrative rules, like statutes, are given a sensible construction bearing in mind the evils intended to be avoided.[51]

¶ 29 In connection with the visual inspection program, the Tax Commission has promulgated a number of rules clearly indicating that valuation of property is an integral part of the program. The visual inspection pro-

42. Title 68 O.S.2001 § 2802(30), see note 20, supra.

43. Title 68 O.S.2001 § 2820(C), see note 4, supra.

44. Title 68 O.S.2001 § 2820(D), see note 4, supra.

45. Title 68 O.S.2001 § 2821(A) providing:
"Each county assessor shall cause real property to be physically inspected as part of the visual inspection cycle and shall require such examination as will provide adequate data from which to make accurate valuations."

46. Title 68 O.S.2001 § 2821(B) providing in pertinent part:
"The information gathered from the physical inspection shall be relevant to the type of property involved, its use category, the valuation methodology to be used for the property, whether the methodology consists of the cost approach, an income and expense approach or sales comparison approach . . ."

47. Title 68 O.S.2001 2823(B), see note 9, supra.

48. Title 68 O.S.2001 § 2822(C), see note 4, supra.

49. Title 68 O.S.2001 § 2825.

50. *Indiana Nat'l Bank v. State* ex rel. *Dept. of Human Serv.*, 1993 OK 101, ¶ 13, 857 P.2d 53.

51. *Oklahoma Alcoholic Beverage Control Bd. v. Burris*, 1980 OK 58, ¶ 13, 626 P.2d 1316, 20 A.L.R.4th 593.

gram, which an assessor presents to the Tax Commission for consideration and approval, must include: a detailed plan to complete the valuation methodology; information on the methodology to be used in determining fair cash values; and evidence sufficient to establish a representative sample from each use category to properly value all property in the county.[52] Information and procedures related to valuation changes must be included in the visual inspection program.[53] Administrative rules specifically provide for the inspection and appraisal of agricultural properties and the methodology by which such property must be valued.[54] Rules relating to multifamily income producing property and commercial/industrial property also contemplate that those properties shall be inspected, appraised and valued.[55] Finally, the Tax Commission's rules specifically provide that information concerning the valuation methodology and the valuation process shall be listed as a part of the visual inspection plan.[56]

¶ 30 Although the statutory language utilized in 68 O.S.2001 2823(B) [57] does not explicitly provide the budgetary items which may be included in the visual inspection budget, it demonstrates the legislative intent to prorate some cost items between the Asses-

sor's visual inspection and regular budgets. Other provisions of the statutory scheme and numerous references to valuation in the lawfully enacted rules of the Tax Commission, clearly indicate that the Legislature and the Tax Commission intend for valuation to be a part of the program. Therefore, we determine that the Excise Board abused its discretion when it eliminated all valuation costs from the Assessor's visual inspection budget.

## CONCLUSION

¶ 31 In holding that the Excise Board has discretion in resolving funding disputes concerning the visual inspection budget and that items of valuation may be included in costs assessed against mill fund recipients, we are not unaware of, or without sympathy, for school districts which have been adversely impacted by the budgetary crisis. It is a sad day when school administrators must choose between providing teachers of core subjects and the creative arts, janitors, bus drivers or nutritionists. However, the same financial squeeze is being felt at all levels of government, including in the counties.

52. Oklahoma Administrative Code § 710:10–10–3 (2000) providing in pertinent part:
"(a) Prior to the beginning of the first visual inspection cycle and each subsequent visual inspection cycle, the county assessor shall develop a detailed visual inspection plan ... which shall contain the comprehensive elements set out in (1) through (9) of this Section. ... (5) The county assessor shall propose a detailed plan to complete the valuation methodology to be used.
(6) The county assessor shall develop a plan that details the methodology to be used in determining the fair cash value of the real property and improvements thereon.
... (8) The plan shall also be adequate to ensure that the information collected from the visual inspection of real property each year is sufficient to establish a representative sample from each use category in order to conduct the proper valuation of all taxable property within each use category.
(9) The plan shall also be adequate to ensure that the information collected from the visual inspection of real property each year is sufficient in order to conduct the proper valuation of all taxable property ..."

53. Oklahoma Administrative Code § 710:10–10–28 (2000) providing in pertinent part:

"(a) Information and procedures related to valuation changes shall be included in the visual inspection plan...."

54. Oklahoma Administrative Code § 710:10–10–27 (2000) providing in pertinent part:

"(a) All agricultural properties shall be inspected and appraised ... and shall be listed in the visual inspection plan....
(b) The use value of agricultural land shall be based on the income capitalization approach using cash rent....
(c) Agricultural land shall be valued according to the specification set forth by 68 O.S.1991, § 2817...."

55. Oklahoma Admin. Code 710:10–10–25 (2000) and 710:10–10–26 (2000), respectively.

56. Oklahoma Admin. Code 710:10–10–21 (2000) providing in pertinent part:

"(a) The information set out in this Section, related to valuation methodology and the valuation process, shall be listed in the visual inspection plan...."

57. Title 68 O.S.2001 § 2823(B), see note 9, supra.

¶ 32 Despite our sympathies, we may not sit as a super legislature,[58] ignore our own jurisprudence and the statutory and rule-based language indicating that, although Excise Boards have authority to adjust items between an Assessor's regular and visual inspection budgets, they may not eliminate an item which both the statutory scheme and validly adopted administrative rules make clear were intended to be included in the visual inspection program. Therefore, we hold that: 1) the Excise Board has discretion in resolving funding disputes concerning the visual inspection budget. Our determination is supported by: the clear, explicit, mandatory and unmistakable language of 68 O.S.2001 § 2822(C) authorizing the Excise Board to resolve funding disputes related to the visual inspection program; and *Clay v. Independent School Dist. No. 1 of Tulsa County*, 1997 OK 13, ¶ 31, 935 P.2d 294, providing that the Excise Board has authority to resolve funding disputes concerning the visual inspection budget.; 2) the evidence presented does not demonstrate an abuse of discretion in the Excise Board's shift of personnel costs from the visual inspection to the regular budget; and 3) because both the statutory scheme and validly promulgated administrative rules clearly contemplate that valuation will be included in the visual inspection budget, the Excise Board abused its discretion in eliminating all valuation costs from the visual inspection budget.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, HARGRAVE, BOUDREAU, WINCHESTER, JJ., concur.

SUMMERS, J., not participating.

---

**58.** *Comer v. Preferred Risk Mutual Ins. Co.*, 1999 OK 86, ¶ 20, 991 P.2d 1006; *City of Hugo v. State ex rel. Public Employees Relations Bd.*, 1994 OK 134, ¶ 23, 886 P.2d 485, *Toxic Waste Impact Group, Inc. v. Leavitt*, 1988 OK 20, ¶ 10, 755 P.2d 626.