2009 OK 97

**Robert REYNOLDS, Plaintiff,**

v.

**ADVANCE ALARMS, INC., an Oklahoma corporation; and Robert Morrison, as an Officer and/or Director, Defendants.**

**No. 106,989.**

Supreme Court of Oklahoma.

Dec. 15, 2009.

As Corrected Dec. 16, 2009.

Terry A. Hall, Armstrong & Lowe, P.C., Tulsa, OK, for plaintiff.

Donna J. Priore, Randal D. Morley, David L. Weatherford, Birmingham, Morley, Weatherford & Priore, P.A., Tulsa, OK, for defendants.

TAYLOR, V.C.J.

¶1 Plaintiff, Robert Reynolds, filed a complaint in the United States District Court for the Northern District of Oklahoma against his former employer, Advanced Alarms, Inc., defendant, and its principal owner, Robert Morrison, individual defendant. Reynolds claimed his former employer violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.*, and the public policy of Oklahoma when the employer allegedly fired him for contacting the Oklahoma Department of Labor with an inquiry about his employer's lunch-break policy. The defendants moved for summary judgment.

¶2 On both the federal retaliation claim and the state public policy claim against the individual Robert Morrison, the federal district court granted summary judgment in favor of Morrison. On the state public policy claim against Advance Alarms, Inc., the federal district court certified the following question of state law to this Court:

> Does the Oklahoma Protection of Labor Act, 40 O.S. §§ 165.2, 165.7, 165.8 and 199, provide an established and well-defined public policy sufficient to support a *Burk* tort claim?

¶3 The federal certification order set forth the following facts relevant to the certified question.

> Plaintiff, Robert Reynolds, worked for defendant, Advanced Alarms, Inc., from September 11, 2006, to May 16, 2007, first as an installer and then as a service technician. At the time he was hired, defendant had a policy requiring all employees to take a lunch break and providing that installers would have one hour deducted and service technicians would have 30 minutes deducted from their time each day for

lunch break. Plaintiff's employment was terminated on May 16, 2007. Defendant contends plaintiff's termination was for substandard performance. Plaintiff alleges he was terminated because he contacted the Oklahoma Department of Labor on May 14, 2007, concerning defendant's lunch break policy and whether, if employees worked through their lunch break, they must be paid. The call was allegedly reported to plaintiff's supervisor by one of plaintiff's fellow service technicians.

Plaintiff in this case asserted a federal claim for retaliatory discharge in violation of the Fair Labor Standards Act and a state common law claim for public policy wrongful discharge.

¶ 4 Employer's legal duty regarding lunch breaks is the crux of the certified facts. Pursuant to § 1604 of the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001, §§ 1601 *et seq.*, we reformulate the certified question within the confines of the federal district court's statement of relevant facts to read as follows:

> Does the Oklahoma Protection of Labor Act, 40 O.S.2001 and Supp.2006, §§ 165.2, 165.7, and 165.8 and 40 O.S.2001, § 199, provide an established and well-defined public policy sufficient to support a *Burk* tort claim based on allegations that the employee was wrongfully discharged for contesting the employer's lunch-break policy?

We answer in the negative.

## I. The *Burk* Tort Remedy

¶ 5 The *Burk* tort remedy is a common law cause of action against an employer based on public policy violation that is available to an employee when there is no other adequate remedy to redress the violation. *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24. It is an exception to the longstanding terminable-at-will employment doctrine applicable to employment of indefinite duration. 1989 OK 22 at ¶ 5, 770 P.2d at 26. The terminable-at-will employment doctrine allows an employer to discharge an employee for good cause, for no cause, or even for morally wrong cause without being liable for a legal wrong. *Id.*

¶ 6 *Burk* adopted the public policy exception to the terminable-at-will employment doctrine for "a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." 1989 OK 22 at ¶ 17, 770 P.2d at 28. *Burk* created a tort remedy limited to those situations "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." 1989 OK 22 at ¶ 19, 770 P.2d at 29. *Burk* cautioned that the public policy exception must be strictly applied: "In light of the vague meaning of the term public policy we believe the public policy exception must be tightly circumscribed." 1989 OK 22 at ¶ 18, 770 P.2d at 28–29.

¶ 7 The *Burk* tort cause of action may be maintained upon the showing of three fundamental elements: 1) the plaintiff and defendant had a terminable-at-will employment relationship; 2) the employment relationship was terminated contrary to an identified compelling Oklahoma public policy that is clearly articulated in constitutional, statutory, or decisional law; and 3) there is no other adequate remedy to protect the identified public policy. *McCrady v. Okla. Dept. of Public Safety,* 2005 OK 67, ¶ 9, 122 P.3d 473, 475. Identifying the compelling public policy, the task we have here, is a question of law. *Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶ 9, 176 P.3d 1204, 1210.

¶ 8 According to Reynolds, Advanced Alarms illegally deducted time for lunch breaks when he actually worked, and Advanced Alarms wrongfully discharged him for seeking information from the Oklahoma Department of Labor as to whether he is legally entitled to be paid for the work he performed during his lunch breaks. The certified question specifies four labor statutes, 40 O.S.2001 and Supp.2006, §§ 165.2, 165.7, 165.8 and 199, and effectively asks whether these statutes 1) require an employer to pay an employee for work performed during lunch time and 2) impose liability upon the employer for discharging an employee who contacts the Oklahoma Department of Labor

about the employer's lunch-break policy. As set out below, these statutes do not support Reynolds' *Burk* tort claim.

## II. The Oklahoma Protection of Labor Act

■ ¶ 9 Originally enacted in 1955,[1] the Oklahoma Protection of Labor Act, 40 O.S. 2001, §§ 165.1 *et seq.*, as amended (Labor Act), unequivocally 1) imposes upon employers the duties to designate at least two paydays each month and to pay employee wages in lawful money on the designated paydays, 2) prohibits waiver of the minimum semi-monthly paydays, 3) prescribes remedies for employees to collect due and unpaid wages, and 4) declares violations of the Labor Act to be misdemeanors. The certified question first cites § 165.2 as a source of the lunch-break public policy. Section 165.2 expresses the central purpose of the Labor Act. The 2006 version of § 165.2, applicable here, reads:

> Every employer in this state shall pay all wages due the employees, other than exempt employees and employees of non-private foundations qualified pursuant to 26 U.S.C. 509(a)(1) and 26 U.S.C. 170(b)(1)(A)(vi), at least twice each calendar month on regular paydays designated in advance by the employer. State, county and municipal employees, exempt employees, and employees of nonprivate foundations qualified pursuant to 26 U.S.C. 509(a)(1) and 26 U.S.C. 170(b)(1)(A)(vi) shall be paid a minimum of once each calendar month. The amount due such employees shall be paid in lawful money of the United States, including payment by electronic means, and the employee shall not be deemed to have waived any right or rights mentioned in this section because of any contract to the contrary. With each payment of wages earned by such employee, the employer shall issue to such employee a brief itemized statement of any and all deductions therefrom. An interval

of not more than eleven (11) days may elapse between the end of the pay period worked and the regular payday designated by the employer. The employer shall be allowed three (3) days after such payday in which to comply with this section.

> No such employer shall issue, in payment of or as evidence of indebtedness due an employee any check, cashier's check, draft, time check, store order, scrip, or other acknowledgment of indebtedness unless the same is payable or redeemable upon demand without discount and for face value in lawful money of the United States.

40 O.S.Supp.2006, § 165.2.

¶ 10 Section 165.2 clearly articulates a compelling public policy requiring an employer, other than governmental employers, to pay an employee, other than exempt employees, his or her earnings on designated paydays at least semimonthly.[2] The federal district court did not certify any fact that indicates Advanced Alarms did not pay wages in lawful money on designated paydays. Section 165.2 also clearly requires the employer to provide the employee with an itemized statement of any and all deductions withheld from the amount of wages paid. The federal district court did not certify any fact that indicates Advanced Alarms did not provide the required itemized statements. Reynolds argued that Advanced Alarms did not include his lunch time in his hours worked, but we have no certified fact that Advanced Alarms' erroneously calculated hours worked or wages earned, and § 165.2 does not purport to guide the employer in calculating hours worked or wages earned.

¶ 11 Reynolds took the position that § 165.2 together with §§ 165.7, 165.8 and 199 of Title 40 compel an employer to pay an employee for work performed during lunch time and protect an employee who contests the employer's lunch-break policy at the Oklahoma Department of Labor. Section 165.7 requires the Commissioner of Labor to

---

1. 1955 Okla. Sess. Laws, p. 240, §§ 1–10, excluding the emergency clause.

2. The Legislature amended § 165.2, effective November 1, 2009, requiring the employer to reimburse the employee for fees and costs incurred when the employer's bank refuses to honor the

employer's check for employee's wages. 2009 Okla. Sess. Laws, ch.164, § 1. This amendment does not alter the public policy, instead it strengthens the compelling nature of the public policy.

enforce the Labor Act, prescribes an administrative procedure for the collection of due and unpaid wages, and allows individuals to bring a judicial action to collect due and unpaid wages.[3]

¶ 12 We have recognized that the administrative and judicial proceedings authorized in § 165.7 are "part of a larger statutory scheme—40 O.S.2001, § 165.1 *et seq.*, as amended—concerning the requirement that covered employers pay the wages due their employees including overtime pay when applicable." *Feightner v. Bank of Oklahoma, N.A.*, 2003 OK 20, ¶ 16, 65 P.3d 624, 629–630. The public proceedings and private actions to collect due and unpaid wages prescribed in § 165.7 undoubtedly mark the compelling na-

ture of § 165.2's payday policy, but there is no language in § 165.7 which explicitly or implicitly articulates a policy regarding work time or lunch breaks.

¶ 13 We turn to § 165.8 of Title 40, which reads:

It shall be a misdemeanor for any employer to violate any of the provisions of Sections 165.1 through 165.11 of this title.

40 O.S.2001, § 165.8. Declaring a violation of the Labor Act to be a misdemeanor emphasizes the compelling nature of the payday policy expressed in § 165.2, but, like § 165.7, § 165.8 neither explicitly nor implicitly articulates a work-time or lunch-break policy.[4]

---

3. 40 O.S.2001, § 165.7 reads:

A. The Commissioner of Labor shall enforce and administer the provisions of this act and in any case where a civil action may be brought for the collection of a wage claim, the Commissioner of Labor may provide for an administrative proceeding to determine the validity and enforce collection of the claim. The administrative proceeding shall be conducted according to the Administrative Procedures Act.

B. In any case when the Commissioner has received a wage complaint, the Commissioner may seek collection of such claim through administrative proceedings in a manner provided in this section. The Commissioner may join in a single administrative proceeding any number of wage claims against the same employer. The Commissioner shall serve upon the employer an order of determination directing the employer to pay to the Commissioner the amount of the wage claim and any penalty amounts. Service shall be made by regular mail to the employer's last-known address. The order of determination shall include:

1. A reference to the particular sections of the statutes or rules involved;

2. A short and concise statement of the basis for the amounts determined to be owed to each wage claimant;

3. A statement that the employer within twenty (20) days after receipt of the order of determination must pay in full the wage claim and any penalties assessed on appeal to district court; and

4. A statement that unless a written request for reconsideration is received by the Commissioner or the order is appealed to district court within the time specified, the order of determination shall become final.

C. Upon failure of the employer to pay the amount specified in the order of determination or to request reconsideration or appeal to district court, the order of determination shall become final.

D. A hearing shall be held in accordance with the applicable provisions of the Administrative Procedures Act by the Commissioner or the Commissioner's designee. The Commissioner shall adopt rules for such hearing. In any hearing before the Commissioner's designee, the designee is authorized to issue the final order in the case.

E. Final administrative orders issued in a wage claim proceeding are subject to appeal pursuant to the Administrative Procedures Act.

F. When an order under this section becomes final by operation of law or an appeal, and the amount due is not paid within twenty (20) days after the order becomes final, the order may be recorded with the county clerk in any county of this state. The clerk shall thereupon record the name of the person incurring the penalty and the amount of the penalty in the county clerk's lien record. The order may be collected as any other money judgment.

G. The remedies provided by Sections 165.1 through 165.11 of this title shall be additional to and not in substitution for and in no manner impair other remedies. Additionally, one or more individuals who are aggrieved by violation of any provision of Sections 165.1 through 165.11 of this title shall be entitled to bring an action in his or their own name to enforce the provisions of such sections.

4. We note that the constitutionality of § 165.8 has been called into doubt. In *State ex rel. Moss v. Couch*, 1992 OK CR 66, ¶ 11, 841 P.2d 1154, 1156, the Court of Criminal Appeals found § 165.8 operated contrary to the state constitutional prohibition against imprisonment for debt, Okla. Const., art. 2, § 13:

The Protection of Labor statutes, 40 O.S.Supp.1982 § 165.1 et seq., are written such that Section 165.8 makes it a crime to violate any of the provisions of Sections 165.1 through 165.11 of Title 40. This Court is disinclined to hold, in this appeal, that Section 13

¶ 14 Lastly, we turn to § 199 of Title 40 which declares that an employer shall be guilty of a misdemeanor if the employer discharges, penalizes, or otherwise discriminates against an employee for filing a complaint with the Commissioner of Labor, or institutes a proceeding on or an investigation of violations of specified labor statutes, or testifies or is about to testify in such proceeding or investigation.[5] Reynolds urged that "the public policy goals underlying Section 199 which support a *Burk* tort claim, apply equally to internal and external complaints," citing *Darrow v. Integris Health, Inc.*, 2008 OK 1, 176 P.3d 1204. *Darrow* recognized that Oklahoma law protects both internal and external reports of whistleblowers and that employees who report and complain of an employer's unlawful or unsafe practices seeking to unmask such breaches for the public good should be protected from an employer's retaliation. 2008 OK 1 at ¶ 19, 176 P.3d at 1215.

¶ 15 Reynolds asserted that he internally and externally contested Advanced Alarms' "illegal wage deductions." He argued that the public policy involved here is "required repayment of unauthorized wage deductions" and that

[it] is obviously important for employees employed in the State of Oklahoma to have

an ability to make wage claims to obtain repayment of these unauthorized wage deductions. Sources of this public policy are found at 40 O.S. Sects. [sic] 165.2, 165.7, 165.8 and 199.

Reynolds' argument is outside the statement of facts certified to this Court. The certified facts do not concern a wage claim for unauthorized wage deductions. Clearly, a wage claim for unauthorized wage deductions could be filed with the Commissioner of Labor pursuant to § 165.7 of Title 40 or in any court of competent jurisdiction pursuant to § 165.9 of Title 40.

¶ 16 As to the external contesting, Reynolds argued that he sought information from the Oklahoma Department of Labor as to whether he is legally entitled to be paid when he worked through and did not take a lunch break. Section 199 protects both the employee seeking to unmask unlawful and unsafe employment practices as well as the employee involved in an investigation or called to testify. Section 199 does not, however, articulate a policy on wages independent of the policy articulated in § 165.2. In the absence of a legal requirement that Advanced Alarms pay Reynolds whenever he works through his lunch without Advanced Alarms' permission, Reynolds' inquiry of the

---

prohibits the criminal prosecution of all violations of the provisions of Sections 165.1 through 165.11. We do hold that Section 13 prohibits criminal prosecutions, of the type initiated against Appellee in Tulsa County District Court Case No. CM–90–1300, for violations of the above-quoted provisions of Section 165.2 of Title 40. 40 O.S.Supp.1982 § 165.2.

5. 40 O.S.2001, § 199 reads:
   A. It shall be a misdemeanor for any employer, as defined in Section 165.1 of this title, or his agent to discharge, penalize or in any other manner discriminate against any employee because:
   1. The employee has filed a complaint with his employer, or the Commissioner of Labor or his authorized representative, to enforce any provision of Sections 71 through 198.2 of this title;
   2. The employee has caused to be instituted a proceeding or investigation related to an alleged violation of any provision of Sections 71 through 198.2 of this title; or
   3. The employee has testified or is about to testify in an investigation or proceeding under this title.

   B. Every employer, as defined in Section 165.1 of this title, or his agent shall be guilty of a misdemeanor if:
   1. The filing of a complaint with the employer, Commissioner of Labor or his authorized representative, or the taking of any action directly related to the complaint by any employee is a substantial and material factor in the discharge, penalization of or any other discrimination against the employee by the employer or his agent; or
   2. The employer or his agent has acted in a manner which has the effect of discouraging, restraining, coercing or interfering with any employee in the exercise of the employee's rights contained in Sections 71 through 198.2 of this title.
   C. Every person convicted of violating a prohibition of this section shall be fined not less than Fifty Dollars ($50.00) nor more than Two Hundred Dollars ($200.00) or imprisoned in the county jail for not less than five (5) days nor more than thirty (30) days, or both.

Oklahoma Department of Labor does not rise to the level of an external report of an employer's unlawful or unsafe practices under § 199 of Title 40.

¶ 17 Reynolds also argued that § 165.1, when read together with these sections, §§ 165.2, 165.7, 165.8, and 199 of Title 40, provides support for the public policy goal his employer violated by his discharge. Section 165.1 defines terms used in the Labor Act. It defines employer to include "every individual, partnership, firm, association, corporation, the legal representative of a deceased individual, or the receiver, trustee or successor of an individual, firm, partnership, association or corporation, employing any person in this state." 40 O.S.2001, § 165.1(1). It defines employee to mean "any person **permitted** to work by an employer." *Id.* § 165.1(2) (bold added). It also defines wages to mean:

compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages **agreed upon between the employer and the employee,** which are earned and due, **or provided by the employer to his employees in an established policy,** whether the amount is determined on a time, task, piece, commission or other basis of calculation;

*Id.* § 165.1(4) (bold added).

¶ 18 These definitions simply do not require an employer to pay an employee for work performed during the lunch break. The definition of "employee" does not impose a duty upon an employer to pay an employee for working through his lunch without the employer's permission. The definition of "wages" does not impose a duty upon an employer to pay an employee for working through the lunch break in the absence of an established policy or an agreement; and according to the certified facts, Advanced Alarms had an established policy that employees must take a lunch break and time for lunch break will be deducted from the hours worked each day. We conclude that §§ 165.1, 165.2, 165.7, 165.8, and 199 of Title 40 do not compel an employer to pay an employee for work performed during a lunch break without the employer's permission and in the absence of an established policy.

■ ¶ 19 Reynolds cited several cases from sister states for the proposition that the labor statutes support a *Burk* tort remedy, but those cases are distinguishable on the issues, the facts or the law, and some are unreported decisions. In determining the intent and purpose of a statute, we look beyond the face of a statute itself. In our independent research of Oklahoma's constitutional, statutory, and decisional law, we find no public policy requiring an employer to pay an employee for work performed during lunch time in the absence of an established policy or agreement. As *Burk* teaches, we will not find an implied public policy in the absence of a constitutional or statutory provision clearly articulating that public policy. *Gilmore v. Enogex, Inc.,* 1994 OK 76, ¶ 14, 878 P.2d 360, 365; *Shero v. Grand Savings Bank,* 2007 OK 24, 161 P.3d 298.

### III. Conclusion

■ ¶ 20 We conclude that Oklahoma does not have a clear and well-defined public policy protecting an employee's right to a lunch break or requiring an employer to pay wages to the employee for work performed during the lunch break without the employer's permission. This conclusion does not encompass employer-ordered work during a lunch break. Our answer to the reformulated question is that the Oklahoma Protection of Labor Act, 40 O.S.2001 and Supp.2006, §§ 165.2, 165.7, and 165.8, and 40 O.S.2001, § 199 do not provide an established and well-defined public policy sufficient to support a *Burk* tort claim based on allegations that the employee was wrongfully discharged for contesting the employer's lunch-break policy.

### REFORMULATED CERTIFIED QUESTION ANSWERED.

TAYLOR, V.C.J., and HARGRAVE, OPALA, and WINCHESTER, JJ., and LAVENDER, S.J., sitting in lieu of REIF, J., who disqualified, concur.

KAUGER, J., concurs in part and dissents in part (by separate writing).

EDMONDSON, C.J., and WATT and COLBERT (by separate writing), JJ., dissent.

COLBERT, J., dissenting with whom EDMONDSON, C.J. and WATT, J., join.

REIF, J., disqualified.

KAUGER, J., concurring in part and dissenting in part.

¶ 1 The question presented is: Does the Oklahoma Protection Labor Act, 40 O.S. §§ 165.7, 165.8 and 199, provide an established and well-defined public policy sufficient to support a *Burk* tort claim?

¶ 2 I would not reformulate the question. Rather, I would answer it as follows: Yes. (*See, Vasek v. Board of County Commissioners*, 2008 OK 35, ¶¶ 27–28, 186 P.3d 928).

¶ 3 The certified facts reveal that this action will fail because Oklahoma does not have a clear and well-defined public policy requiring an employer to pay wages to the employee for work performed during the lunch break without the employer's permission. However, instead of answering the question posed, we have reformulated the question to become the trier of the facts.

COLBERT, J., dissenting, with whom EDMONDSON, C.J. and WATT, J., join.

¶ 1 Today this Court answers a federal certified question without mention or application of a recent controlling decision. The reason for this glaring omission is unclear, but application of precedent requires an answer opposite to today's holding. I must dissent and explain how today's answer would be different if precedent had been applied.

¶ 2 A federal court has certified a question of law that is almost identical to the issue addressed by this Court's recent pronouncement in *Vasek v. Board of County Commissioners*, 2008 OK 35, 186 P.3d 928. There, a deputy court clerk was alleged to have been fired for reporting possible violations of the Oklahoma Occupational Health and Safety Standards Act (OOHSSA), Okla. Stat. tit. 40, §§ 401–435 (2001 & Supp.2008). The employee's report to the Oklahoma Department of Labor concerned possible violations of the

Act arising from mold in the courthouse in Noble County. The mold was caused by inmates of the jail who overflowed their toilets onto offices located below. *Vasek* applied a whistleblower provision contained in OOHSSA which provided: "No person shall discharge, discriminate or take adverse personnel action against any employee because such employee has filed any complaint, or instituted or caused to be instituted any proceeding under or related to this act." *Id.* at § 403(B); *Vasek*, 2008 OK 35, ¶ 24, 186 P.3d at 933. This Court noted that "[i]t is difficult to imagine a statement of public policy more specific or more applicable to the conduct Plaintiff alleged." *Vasek*, 2008 OK 35, ¶ 25, 186 P.3d at 933. However, the statement of public policy in this matter may be even more so.

¶ 3 The Protection of Labor Act contains a whistleblower provision which criminalizes the discharge of an employee for making contact with the Department of Labor in order to initiate an investigation or complaint, or otherwise exercise the rights provided by the Act. Section 199 provides:

A. It shall be a misdemeanor for any employer, as defined in Section 165.1 of this title, or his agent to discharge, penalize or in any other manner discriminate against any employee because:

1. The employee has filed a complaint with his employer, or the Commissioner of Labor or his authorized representative, to enforce any provision of Sections 71 through 198.2 of this title;

2. The employee has caused to be instituted a proceeding or investigation related to an alleged violation of any provision of Sections 71 through 198.2 of this title; or

3. The employee has testified or is about to testify in an investigation or proceeding under this title.

B. Every employer, as defined in Section 165.1 of this title, or his agent shall be guilty of a misdemeanor if:

1. The filing of a complaint with the employer, Commissioner of Labor or his authorized representative, or the taking of any action directly related to the com-

plaint by any employee is a substantial and material factor in the discharge, penalization of or any other discrimination against the employee by the employer or his agent; or

2. The employer or his agent has acted in a manner which has the effect of discouraging, restraining, coercing or interfering with any employee in the exercise of the employee's rights contained in Sections 71 through 198.2 of this title.

C. Every person convicted of violating a prohibition of this section shall be fined not less than Fifty Dollars ($50.00) nor more than Two Hundred Dollars ($200.00) or imprisoned in the county jail for not less than five (5) days nor more than thirty (30) days, or both.

Okla. Stat. tit. 40, § 199 (Supp.2005). For purposes of section 199, "[e]mployer means every individual, partnership, firm, association, corporation, the legal representative of a deceased individual, or the receiver, trustee or successor of an individual, firm, partnership, association or corporation, employing any person in this state." *Id.* at § 165.1.

¶ 4 With such a clear articulation of public policy before it, how can this Court hold that an employee termination that violates section 199, a misdemeanor, is an insufficient basis for a wrongful termination claim? The rationale behind such a holding in the face of so clear an articulation of public policy escapes me, as does the reason for omitting application of a whistleblower case which is directly on point. *Vasek*, and the decisions on which it relied, must be applied to properly answer the federal question and to avoid confusion in this Court's wrongful termination jurisprudence. In doing so, the focus of analysis will remain properly on application of the test for wrongful termination rather than on whether the discharged employee had a valid regulatory claim against his employer.

¶ 5 *Vasek* clearly stated the elements of a wrongful termination claim. Such a claim must allege:

(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of con-

duct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

2008 OK 35, ¶ 14, 186 P.3d at 932. *See also Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶¶ 9–19, 176 P.3d 1204, 1210–16; *McCrady v. Okla. Dept. of Pub. Safety*, 2005 OK 67, ¶ 9, 122 P.3d 473, 475.

¶ 6 The narrow issue raised by this matter is whether an Oklahoma statute prescribes a norm of conduct for Oklahoma. Certainly section 199 does so. That prescribed norm states that it is not permissible to take adverse action against an employee for pursuing a right provided by the Protection of Labor Act and other enumerated provisions of title 40. Although the federal court inquired as to the "sufficiency" of the public policy goal, sufficiency of the prescribed norm of conduct is not an element of a wrongful termination claim, nor has it been a proper subject of inquiry under this Court's wrongful termination jurisprudence, at least not until today. Focused on the proper test, the analysis examines whether a policy goal which prescribes a norm of conduct has been identified.

¶ 7 According to the majority opinion, Plaintiff alleges he was fired "for contacting the Oklahoma Department of Labor with an inquiry about his employer's lunch-break policy." The question asked is whether, within certain statutes enumerated by the federal court, there is an Oklahoma norm of conduct which states that it is not permissible to discharge an employee for making contact with the Department of Labor concerning the calculation of his hours and wages. Again, section 199 is aimed precisely at protection of such conduct by an employee. This Court's analysis strayed when it focused on whether Plaintiff had a viable wage claim under section 165.2 of title 40 which addresses the payment of "wages." That was not the question asked by the federal court and it is irrelevant to his wrongful termination claim. The question of whether Plaintiff had a viable wage claim is irrelevant to this matter, just as the issue of the actual existence of harmful mold in the courthouse was irrelevant in *Vasek*. An employee is not required to correctly assess the likelihood that the employer is actually violating a statute before making an inquiry of a regulatory agen-

cy charged with the employee's protection. The question is simply whether there is an established norm of conduct which prevents an employee's discharge without consequences for making contact with a regulatory agency. Although a prescribed norm of conduct against discharging a worker for contact with the Department of Labor was present in both this matter and in *Vasek*, this Court has chosen to give effect to that norm of conduct only in *Vasek*.

¶ 8 Today's decision ignores precedent. It brings uncertainty and confusion to wrongful termination actions brought by whistleblowers. It tells employees in Oklahoma they must not inquire concerning, much less report, any suspicions they have about the legality of their employer's conduct to a regulatory agency. If they do, they risk discharge with no redress, even in the presence of a statute criminalizing such a discharge by their employer.

¶ 9 The astounding contradiction in the treatment of the terminated plaintiff in *Vasek* and Plaintiff in this matter will not go unnoticed. Whatever benefit this Court finds in its disparate treatment of the similarly situated plaintiffs will be outweighed by the needless confusion today's opinion creates and the fundamental unfairness it propagates.