2011 OK 60

**Matthew V. HAMRICK, Plaintiff,**

v.

**STATE of Oklahoma ex rel., OFFICE OF the CHIEF MEDICAL EXAMINER, Defendant.**

No. 109,249.

Supreme Court of Oklahoma.

June 21, 2011.

---

**55.** Title 23 O.S. Supp.2002 § 9.1, see note 10, supra.

**56.** Title 85 O.S.2001 § 6, see note 10, supra.

**57.** Title 85 O.S.2001 § 45, see note 43, supra.

Charles C. Vaught, Kevin S. Merritt, Armstrong & Lowe, P.C., Tulsa, Oklahoma, for Plaintiff.

Kindanne C. Jones, Sandra J. Balzer, Susan K. Noland, Assistant Attorneys General, Oklahoma City, Oklahoma, for Defendant.

REIF, J.:

¶1 Plaintiff, Matthew V. Hamrick, sued the State of Oklahoma *ex rel.*, Office of the Chief Medical Examiner in the United States District Court for the Northern District of Oklahoma. He seeks recovery for wrongs he allegedly suffered during his employment with the Office of the Chief Medical Examiner. Plaintiff initially asserted seven claims against the State, grounded on both federal and state law. Plaintiff later dismissed all of the state law claims except his claim for unpaid wages under the Protection of Labor Act, 40 O.S.2001 and Supp. 2010, 165.1 through 165.11. Relying specifically on section 165.9, plaintiff claimed entitlement to liquidated damages, costs, and reasonable attorney fees, in addition to the unpaid wages.

¶2 The State contested plaintiff's right to rely on section 165.9 as a basis to recover such relief. The State noted that the State is not included in the statutory definition of "employer" as used in sections 165.1 through 165.11. In response, plaintiff contended that the statutory definition of "employer" as used in sections 165.1 through 165.11 is broad enough to include the State and should be so construed to afford unclassified state employees, like plaintiff, a state law remedy to collect unpaid wages. Plaintiff pointed out that unclassified employees cannot pursue wage claims through the Merit Protection grievance process and will have no state law remedy to pursue a wage claim if the State is not treated as an employer under sections 165.1 through 165.11.

¶3 Citing the absence of precedential authority on the rights of unclassified state employees to pursue a claim for unpaid wages, the plaintiff and State jointly requested the federal court to certify a question of law to determine the applicability of section 165.9 to such a wage claim. The federal court granted the parties' request and inquired: "Does an unclassified state employee who alleges his employer failed to pay him wages have a private right of action under 40 O.S.2001, 165.9."

¶ 4 The federal certification order set forth the following facts relevant to the certified question:

Mr. Hamrick was employed by the Office of the Chief Medical Examiner (OCME) as an investigator in its Tulsa office from September 1, 2006, through February 10, 2010. Throughout his service as an investigator, Mr. Hamrick's employment status was that of a full time "unclassified" state employee. There is no dispute that during Mr. Hamrick's tenure with OCME, the agency's scheduling required that its investigators work day shifts in the office, overnight "on call" shifts, and weekend "on call" shifts on a rotating basis. During the time in question, a Tulsa investigator's scheduled office hours, combined with the hours the investigator was scheduled to be "on call," commonly exceeded forty (40) hours in a week.

OCME compensate Mr. Hamrick and continues to compensate its investigators for the hours for which they are engaged to work and which time is recorded on their time sheets and/or daily activity logs. However, OCME does not pay investigators for the entire period during which they are "on call."

Mr. Hamrick's responsibilities as an investigator OCME required him to drive a state vehicle to death scenes over which the agency exercised jurisdiction. OCME had in place a personnel policy and practice provision that provided that "[a]ny employee violating the provisions of this section (operation of state vehicle) may be subject to disciplinary action and/or termination and may be subject to fine or imprisonment in accordance with State Law." *Employee Handbook*, p. 39.

Mr. Hamrick contends that OCME's "on-call" system is onerous that it has created an "engaged to wait" system and that he should be compensated for all time he was "on-call." Mr. Hamrick contends that OCME's practice of conducting performance reviews concerning an investigator's ability to respond to death calls within 15 minutes of receipt 95% of the time is evidence which supports this contention. OCME disputes that it created such a

system and contends that the employees were "waiting to be engaged."

Prior to initiating this action, Mr. Hamrick submitted a claim to OCME in which he contended that he had not been fully compensated by OCME for wages earned. Among the issues raised by Mr. Hamrick was his contention that he should be compensated for all hours he was "on call" as opposed to the hours he was actually engaged to work while on call. Upon receipt of his (and other) allegations, OCME unilaterally contacted the United States Department of Labor (USDOL) regarding the allegations. USDOL investigated Mr. Hamrick's allegations and as a result, OCME paid the gross amount of $727.19 for wages owed. Mr. Hamrick contends, however, that this amount is insufficient and that the amount owed to him is far greater that $727.19. Mr. Hamrick further contends that he was not given any opportunity to be heard before the USDOL, and has not ever been afforded the opportunity to be heard regarding his claim.

In addition and prior to initiating this action, Mr. Hamrick submitted a complaint to the Oklahoma Merit Protection Commission (OMPC) regarding the type of leave he was required to take as a result of a family member's death. OCME and Mr. Hamrick engaged in mediation through OMPC and resolved Mr. Hamrick's complaint. There is no dispute, however, that OCME has no formal grievance procedure within the employee handbook.

Mr. Hamrick has initiated an action against OCME alleging, inter alia, that OCME's failure to compensate him for every hour he is scheduled to be on-call is a violation of OKLA. STAT. tit. 40, § 165.1 et seq. Mr. Hamrick claims that denying a private right of action to "unclassified" state employees would violate the Oklahoma Constitution. OCME denies that it has failed to pay Mr. Hamrick wages and asserts that he does not have a private right of action under §§ 165.1 et seq. In particular, OCME argues that state agencies are excluded from the definition of "employer" in the administrative regula-

tions implementing OKLA. STAT. tit. 40, § 165.1 et seq.

Upon review of all the provisions of sections 165.1 through 165.11, we reformulate the question within the confines of the foregoing statement of facts to read: Can an unclassified state employee maintain a private right of action under 40 O.S.2001 and Supp. 2010, 165.1 through 165.11 to recover wages allegedly owed the employee by his state entity employer?

¶ 5 We recast the question because section 165.9 cannot be construed in isolation, but must be interpreted in context of the Protection of Labor Act as a whole. In this way, the full scope of a state employee's rights under these statutes can be addressed. This approach leads us to answer the reformulated question in the affirmative, except as to the recovery of liquidated damages.

¶ 6 As previously noted, the plaintiff asserts that the State Merit Protection grievance process is not available to him and other unclassified state employees to resolve a dispute with the State concerning unpaid wages for overtime. As a consequence, plaintiff contends that section 165.9 provides the only remedy for an unclassified state employee to pursue a claim for overtime allegedly worked, but not compensated. Plaintiff points out that section 165.9 provides, in pertinent part, that an action may be maintained by "an *employee* to recover unpaid wages and liquidated damages . . . for and in behalf of himself and . . . other employees similarly situated. . . ." In addition, section 165.1(4) defines wages to include "overtime pay." Furthermore, the term "employee" *as used in sections 165.1 through 165.11* is defined to mean "any person permitted to work by an employer," § 165.1(2).

¶ 7 In response, the State notes that the State is not included in the definition of an "employer" as used in sections 165.1 through 165.11.[1] The Legislature provided that the

term "employer," as used in sections 165.1 through 165.11, means "every individual, partnership, firm, association, corporation, the legal representative of a deceased individual, or the receiver, trustee or successor of an individual, firm partnership, association or corporation, employing any person in this state."

¶ 8 In review of sections 165.1 through 165.11, it is readily apparent that the Legislature intended to allocate certain rights and duties under the Act to parties that meet the special statutory definitions of "employer" and "employee." It is equally clear, however, that the Legislature imposed certain obligations on the State and granted certain rights to "state employees" apart from the special statutory definitions. As discussed more fully below, the Legislature made the State and state employees subject to section 165.2 which, in turn, allows state employees to enforce the provisions of section 165.2 as provided in sections 165.7(G) and 165.9.

¶ 9 Intent to make the State subject to section 165.2 is found in the statute's opening sentence: "Every employer in this State shall pay all wages due the employees . . . on regular paydays designated in advance." Rather than make section 165.2 applicable to "an employer," which would indicate an employer as defined by section 165.1(1), the Legislature declared that "Every employer in this State" was subject to the command for payment of all wages due on regular paydays. Use of "every" means "any" and "all," and conveys a broad expansive meaning indicating inclusion is intended. *Coffee v. Henry*, 2010 OK 4, ¶ 10, 240 P.3d 1056, 1057. The term "Every employer in this State" includes the State. Although the opening sentence also requires that such regular paydays should occur at least twice a month, the Legislature provided an exception to this requirement in the next sentence for "state

---

1. The State of Oklahoma also points out that the Commissioner of Labor expressly excluded the State of Oklahoma from the definition of an "employer" subject to the Commissioner's administrative process for collecting unpaid wages. *See* Okla. Admin. Code 380:30–1–1. Pursuant to 40 O.S.2001, 165.7, the Commissioner *"may* provide, for an administrative proceeding" in any

case "where a civil action may be brought for the collection of a wage claim." (Emphasis added). The Commissioner's exclusion of wage claims involving particular employers, such as the State, from the administrative process is a matter of discretion, and has no bearing on whether such employer is otherwise liable for an action at law under §§ 165.7(G) or 165.9.

employees" and certain other employees by allowing a regular payday once a month.

¶ 10 In addition to requiring regular paydays, section 165.2 further provides (1) "[t]he amount due *such* employee, shall be paid in lawful money," and (2) "[w]ith each payment of wages earned by *such* employee, the employer shall issue to *such* employee a brief itemized statement of any and all deductions therefrom." (Emphasis added.) The modifier "such" in this context means "being the same as what has been mentioned." 1284 Black's Law Dictionary (5th ed. 1979). Modifying the term "employee" with the word "such" indicates that these provisions refer to *all* employees previously mentioned, including "state employees."

¶ 11 In summary, the rights given State employees under section 165.2 are (1) payment of all wages due, (2) in lawful money, (3) at least once a month, (4) on a regular payday, and (5) receipt of an itemized statement of deductions. State employees who are aggrieved by the State's violation of such rights may bring an action to enforce these rights as provided in section 165.7(G): "[I]ndividuals who are aggrieved by violation of any provision of Sections 165.1 through 165.11 of [the Act] shall be entitled to bring an action ... to enforce the provisions of such sections."

¶ 12 In addition, section 165.7(G) makes it clear that "[t]he remedies provided by sections 165.1 through 165.11 of [the Act] shall be in addition to and not in substitution for and in no manner impair other remedies." Both this Court and the Court of Criminal Appeals have concluded that unpaid wages are a debt arising out of contract. *Reynolds v. Advance Alarms, Inc.,* 2009 OK 97, ¶ 13, n. 4, 232 P.3d 907, 911–12; *State ex rel. Moss v. Couch,* 1992 OK CR 66, ¶¶ 9–11, 841 P.2d 1154, 1155–56. In general, a debt is an obligation to pay money. *See Burke v. Boulder Milling & Elevator Co.,* 77 Colo. 230, 235 P. 574, 575 (1925).

¶ 13 The contractual obligations of the State involving the payment of money may be enforced against the State in an ordinary action at law. *U.C. Leasing, Inc. v. State Board of Public Affairs,* 1987 OK 43, ¶ 19,

737 P.2d 1191, 1195. The statutory remedy for breach of an obligation to pay money is "the amount due by the terms of the obligation with interest thereon." 23 O.S.2001 22.

¶ 14 The terms of the State's obligation to pay overtime worked by both classified and unclassified employees are set forth in 70 O.S. Supp.2010, § 840–2.15. Subsection (A) of this statute adopts "the minimum overtime entitlement provisions of the Fair Labor Standards Act and regulations promulgated thereunder except as [otherwise] provided [in subsections (B) through (E) ]." For purposes of answering the certified question, we deem it unnecessary to determine whether any of the exceptions set forth in subsections (B) through (E) apply to plaintiff's claim. We also deem it is unnecessary to identify the specific provisions set forth in the Fair Labor Standards Act and implementing regulations that bear on the merits of plaintiff's claim. Plaintiff bears the burden in further proceedings to demonstrate how the facts of this case bring him within the provisions of the Fair Labor Standards Act.

¶ 15 While it is clear that an unclassified state employee can bring an action to recover all the wages due on regular paydays as provided in section 165.2, and can bring such action in a court of competent jurisdiction as provided in section 165.9, it is equally clear the Legislature did not include either the State or state employees within the liquidated damages provision of section 165.3. This statute states:

A. Whenever *an employee's* employment terminates, *the employer* shall pay *the employee's* wages in full, less offsets and less any amount over which a bona fide disagreement exists, as defined by Section 165.1 of this title, at the next regular designated payday established for the pay period in which the work was performed either through the regular pay channels or by certified mail postmarked within the deadlines herein specified if requested by *the employee,* unless provided otherwise by a collective bargaining agreement that covers *the employee.*

B. If *an employer* fails to pay *an employee* wages as required under subsection A of

this section, such *employer* shall be additionally liable to *the employee* for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due if the *employer* willfully withheld wages over which there was no bona fide disagreement; or in an amount equal to the unpaid wages, whichever is smaller; provided, however, that for the purpose of such liquidated damages such failure shall not be deemed to continue after the date of the filing of a petition in bankruptcy with respect to the *employer* if he thereafter shall have been adjudicated bankrupt upon such petition. (Emphasis added.)

¶ 16 With one exception, the references to "employer" and "employee" in section 165.3 are modified only by the articles "an" and "the." This choice of language indicates that the Legislature was using the terms employer and employee as specially defined in section 165.1. The Legislature has also generally provided that "[w]henever the meaning of a word or phrase is defined by any statute, such definition is applicable to the same word or phrase whenever it occurs, except where a contrary intention plainly appears." 25 O.S. 2001, 2.

¶ 17 Finding no intent to make either the State or state employees subject to section 165.3, we must conclude that an unclassified state employee cannot recover liquidated damages in connection with a claim for unpaid wages. The language in section 165.9 authorizing an "[a]ction to recover unpaid wages and liquidated damages" does not make liquidated damages a remedy generally available in an action brought under section 165.9, but allows the recovery of liquidated damages, only if such are otherwise provided by section 165.3.

■ ¶ 18 In conclusion and in answer to the reformulated certified question, we hold an unclassified state employee can bring an action under sections 165.7(G) and 165.9 of the Protection of Labor Act to recover all wages, including overtime, that were due but not paid, on one or more regular paydays as provided by section 165.2. We further hold that an unclassified state employee cannot recover liquidated damages as provided in section 165.3 based on any such unpaid wages, and therefore the language in section 165.9 allowing recovery of liquidated damages does not apply to an action brought by an unclassified state employee.

## REFORMULATED FEDERAL CERTIFIED QUESTION ANSWERED.

¶ 19 TAYLOR, C.J., COLBERT, V.C.J., WINCHESTER, EDMONDSON, REIF, COMBS, and GURICH, JJ., concur.

¶ 20 KAUGER and WATT, JJ., concur in part; dissent in part.

WATT, J., with whom KAUGER, J. joins, concurring in part and dissenting in part:

¶ 1 I agree with the majority's determination that an unclassified employee can maintain an action pursuant to the Protection of Labor Act (Labor Protection Act), 40 O.S. 2001 165.1 et seq. I express no opinion on whether the same employee may be entitled to liquidated damages pursuant to 40 O.S. 2001 165.9 [1] allowing an employee to recover both unpaid wages and liquidated damages. I dissent on two grounds. First, the majority has not merely "reformulated" the question but has gone outside of the question certified to promulgate an advisory opinion on the issue of liquidated damages. Second, the majority's opinion appears internally inconsistent in its treatment of the terms "employee" and "employer" within the confines of the Labor Protection Act, ignoring long-established rules of statutory construction.

¶ 2 **1) The majority's pronouncement on the liquidated damages issue amounts to nothing more than a prohibited advisory opinion.**

¶ 3 It is not this Court's province to intrude upon the certifying court's decision

---

1. Title 40 O.S.2001 165.9 providing in pertinent part:

"A. Action by an employee to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and on behalf of all employees similarly situated for such wages...."

making process.[2] Although we are given the authority to reformulate questions certified by 20 O.S.2001 1602.1,[3] we should not utilize this tool in the guise of issuing an advisory opinion or to address a hypothetical question[4] especially in light of our well-established rule prohibiting such pronouncements.[5] This rule against promulgating advisory opinions does not change merely because the cause arises out of a federal certified question.[6] **Furthermore, we have found unconvincing arguments that such questions should be answered simply because they will settle an undetermined area of state law that will affect the cause and all others with similar issues.[7]**

¶4 **2) The majority ignores rules of statutory construction by its treatment of "employer" and "employee" differently in different sections of the Labor Protection Act producing an internally inconsistent document.**

¶5 The majority treats the defined terms "employer" and "employee" in one manner for determining the issue as to whether the unclassified employee may maintain an action under the Labor Protection Act and in a different manner altogether in relation to whether the same employee may recover liquidated damages for violation of the Act. As early as 1921, the Court recognized the general rule that where the same word is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning is clear, this meaning will be attached to it elsewhere.[8] Some nineteen years later, the Court stated that where a word is defined in a statute, "it will be presumed that it was used in that same sense throughout the section."[9]

## CONCLUSION

¶6 No basis exists for the majority's gratuitous answer on the liquidated damages issue. It can be considered nothing more than a prohibited advisory opinion on an issue this Court was not asked to address. Furthermore, in promulgating the advisory opinion, it is likely that this Court has ended the federal litigation. Finally, the majority ignores long-established rules of statutory construction by treating the same defined words within the Labor Protection Act differently in various sections of the Act.

¶7 I concur to the extent that the majority determinates that an unclassified employee can maintain an action pursuant to the Protection of Labor Act (Labor Protection Act), 40 O.S.2001 165.1 et seq. I concur in this portion of the opinion because it addresses

2. *Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶9, 221 P.3d 717.

3. Title 20 O.S.2001 1602.1 providing:
   "Power to Reformulate Question. The Supreme Court of this state may reformulate a question of law certified to it."

4. Comment to Uniform Certification of Questions of Law Act, § 4 (2008) providing in pertinent part:
   "This section is new and authorizes the receiving court to 'reformulate' the certified question. Requiring a question to be answered precisely as it is certified imposes a counterproductive rigidity that could decrease the utility of the answer received. **Permitting the receiving court to amend the certified question freely may also adversely affect the utility of the answer and result in the issuance of an advisory opinion ....**" [Emphasis supplied.] At least one Court limits its answers to federal certified questions confining them strictly to the questions certified. See, *Western Savings & Loan Ass'n v. CFS Portales Ethanol I, Ltd.*, 107 N.M. 143, 754 P.2d 520 (1988).

5. *Matter of Adoption of Baby G.*, 2008 OK 92, ¶7, 195 P.3d 377 [Authored by Reif, J. and recognizing that this Court does not sit to decide hypothetical issues or to give advisory opinions about issues not yet in controversy.]; *Knight v. Miller*, 2008 OK 81, ¶8, 195 P.3d 372; *Scott v. Peterson*, 2005 OK 84 ¶27, 126 P.3d 1232; *Thomas v. E-Z Mart Stores, Inc.*, 2004 OK 82, n. 3, 102 P.3d 133; *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, n. 14, 100 P.3d 678; *Tulsa County Budget Bd. v. Tulsa County Excise Bd.*, 2003 OK 103, n. 31, 81 P.3d 662.

6. *Ball v. Wilshire Ins. Co.*, see note 2, supra [Reif, J. concurring in the majority opinion.].

7. *Id.*

8. *Walton v. Donnelly, Com'r of Finance and Accounting*, 1921 OK 258, ¶0, 201 P. 367.

9. *Roberts v. Newell*, 1940 OK 15, ¶5 101 P.2d 824.

the question asked and properly states the current state of the law in Oklahoma. I dissent from the portion of the opinion which addresses the issue of liquidated damages because it unnecessarily goes outside the parameters of the question certified rendering an advisory opinion on an issue of first impression in our jurisdiction.